**Donald E. POTTER,**
**Complainant, Respondent,**

v.

**LaSALLE SPORTS & HEALTH**
**CLUB, Relator.**

**No. C7–84–2000.**

Court of Appeals of Minnesota.

June 4, 1985.

Mark A. Masica, Joyce C. Yetter, Minneapolis, for respondent.

Steven D. Jamar, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis Com'n of Civil Rights, Minneapolis, for relator.

Heard, considered, and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by a Writ of Certiorari to this court from an order of the Minneapolis Civil Rights Commission pursuant to the Minneapolis Civil Rights Ordinance which found that the relator, LaSalle Court Sports & Health Club (LaSalle), had discriminated against respondent Donald Potter on the basis of his affectional preference, ordered relator to pay Potter $1,000 in punitive damages, pay Potter's counsel $1,000 in attorney's fees, and cease the acts found discriminatory. We affirm.

## FACTS

A significant portion of the membership of LaSalle are homosexual males. Potter was a member. Due to past lax management and lack of enforcement of rules regarding appropriate conduct, LaSalle became frequented by homosexual males engaging in sexual solicitation, open sexual activity, and sexual harassment of other club members. Heterosexual members also engaged in similar behavior, but this was of a lesser frequency. As a result, LaSalle's owners were receiving multiple

complaints, and sales of memberships declined. To combat this problem, new management instituted an unwritten policy to foreclose all opportunities for such inappropriate behavior to occur. LaSalle's staff was instructed by management to patrol the club and require that members utilize facilities and services promptly, without loitering or "improper" socializing. LaSalle's definition of what constitutes improper socializing is ambiguous, but clearly includes homosexuals congregating and socializing with other homosexuals.

In April 1983, Potter took a break from his weight workout and began conversing with a friend who was also working out. The conversation concerned the treatment of an injured elbow to effectuate the reduction of strain on the elbow during workouts. Testimony conflicts as to whether Potter replaced the weights he was using back in the rack. Both Potter and his friend are homosexual males.

Loso, an employee on duty in the workout room, approached Potter twice and informed him and his friend that they had to either resume working out or leave. Potter chose not to resume working out and left. At the time of this incident, the policy banning homosexual socializing had not been communicated to LaSalle's general membership.

In June 1983 Potter filed a complaint with the Minneapolis Civil Rights Commission (the Commission) alleging that LaSalle had discriminated against him on the basis of his affectional preference. At the hearing on Potter's complaint, Loso admitted that he confronted Potter and his friend because he thought they were creating a gay atmosphere. There is no evidence that Potter and his friend were engaging in any inappropriate conduct. From the Commission's ruling adverse to it, LaSalle now appeals, arguing that Potter failed to establish a prima facie cause of action, that LaSalle's policy preventing socializing or loitering constitutes a reasonable business regulation compelled by social, legal, and business requirements, that the Commission's findings are not based on substantial

evidence in the record, that Potter is not entitled to punitive damages, and that the award of attorney's fees is improper.

## ISSUES

1. Did Potter fail to establish a prima facie cause of action at the hearing before the Commission?

2. Does LaSalle's policy prohibiting homosexual socializing or loitering constitute a reasonable business regulation and therefore an affirmative defense to a claim of discrimination in this fact situation?

3. Is the Commission's finding of discrimination on the basis of affectional preference based on substantial evidence in the record?

4. Is the Commission's award to Potter of punitive damages proper?

5. Did the Commission err when it ordered LaSalle to pay Potter's counsel $1,000 in attorney's fees? May this court award attorney's fees to Potter pursuant to this appeal?

## ANALYSIS

The provisions of the Minneapolis Civil Rights Ordinance (the Ordinance) relevant to this appeal are:

139.20. **Definitions**

&ast; &ast; &ast; &ast; &ast; &ast;

(h) *Discriminate or discrimination.* "Discriminate" or "discrimination" includes any act, attempted act, policy or practice which results in the unequal treatment, separation or segregation of or which otherwise adversely affects any person who is a member of a class protected by this Title &ast; &ast; &ast;.

&ast; &ast; &ast; &ast; &ast; &ast;

139.40. **Acts of discrimination specified.** Without limitation, the following are declared to be unfair discriminatory acts:

&ast; &ast; &ast; &ast; &ast; &ast;

(h) *Discrimination in public accommodations.* For any person engaged in the

provision of public accommodations, because of * * * affectional preference * *

2) To discriminate against any person with respect to the availability of such services and facilities, * * * the scope and quality thereof, or the terms and conditions under which the same are made available * * *.

Minneapolis, Minn., Code of Ordinances §§ 139.20(h), .40(h)(2) (1976 & Supp. No. 6, 6–82).

1. When analyzing discrimination cases, the Minnesota Supreme Court has adopted the three-part test established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hubbard v. United Press Int'l., Inc.*, 330 N.W.2d 428, 441 (Minn.1983). This test consists of a prima facie case, an answer, and a rebuttal. *Id.*

The specific elements of a prima facie case must be modified for varying factual patterns. *Id.* at 442. For this fact situation, the elements of a prima facie case would be: (1) that Potter, as a homosexual, is a member of a protected class; (2) that LaSalle, a public accommodation, in enforcing its policy prohibiting socializing in this situation, was discriminating against Potter regarding the availability of its facilities; and (3) that the enforcement of this policy as to Potter was due to Potter's membership in the protected class. The Commission found that these three elements were met.

LaSalle argues that a further element must be added for Potter to establish a prima facie case. It urges that there can be no prima facie case unless there has been a showing of a legal injury. This argument is without merit.

■ When an individual or a company has been held to have violated the provisions of a specific civil rights law, the act of discrimination itself constitutes sufficient injury for the law to provide a remedy, in the absence of statutory language requiring more. *See Kamrath v. Suburban National Bank*, 363 N.W.2d 108, 111–112 (Minn.Ct.App.1985). Here there is no requirement pursuant to the Ordinance

that the act or acts complained of must constitute a defamation, invasion of privacy, assault, battery, or other such legal injury.

■ LaSalle also argues that Potter has failed to establish a prima facie cause of action because the Ordinance protects homosexual affectional preferences, but not overt homosexual conduct in violation of the general mores of the population or the law.

Significantly, Potter has never been observed engaging in any sexual activity at LaSalle. Neither has he been charged with any conduct which would constitute sexual harassment of club members. He does not argue that such conduct would be protected, and acknowledges that LaSalle must prohibit such behavior on the part of either heterosexual or homosexual members.

LaSalle argues, however, that Loso's confrontation of Potter was warranted because Potter's conduct was "creating a homosexual environment which was not appropriate for working out and which was offensive to people of normal sensibilities." The Commission found that Potter was engaging in a simple conversation regarding an injury. Homosexuals must have the same rights to engage in conversation in a public place as other members of society. This is exactly the type of discrimination in public accommodations which the Ordinance was enacted to address.

■ 2. Pursuant to *McDonnell-Douglas*, once a prima facie case of discrimination has been established, the burden shifts to the opposing party to articulate some legitimate, nondiscriminatory reason for the alleged discriminatory action. *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir.1983) (citing *McDonnell-Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). If such a nondiscriminatory rationale can be articulated, the burden then reverts to the complainant to show discriminatory intent. *Id.* at 1142 (citing *McDonnell-Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825). If the opposing party fails to meet this burden, the complainant's prima facie

case stands unrebutted, and judgment must be entered for the complainant as a matter of law. *Perryman,* 698 F.2d 1142 (citation omitted).

LaSalle argues that its policy prohibiting loitering or improper socializing by club members constitutes a valid defense to Potter's complaint of discrimination. They assert that the policy was required to confront and control the rampant occurrences of sexual solicitation, sexual activity, and sexual harassment formerly engaged in by members of LaSalle.

■ We are not insensitive to the task faced by LaSalle's new management when first confronting the admittedly inappropriate sexual activity and environment then existing. However, we must recognize, as did the Commission, that Potter never was accused of inappropriate behavior. The Commission found him to be engaged in an innocent conversation regarding an injury. In such a context, the confrontation of Potter by Loso appears impelled, not by the inappropriateness of Potter's conduct, but rather by the fact that Potter is a homosexual engaged in conversation with another homosexual. LaSalle's argument of a valid defense must fail and Potter's prima facie case stands unrebutted.

Surely, LaSalle does have an obligation to its members to guarantee that the club facilities are used fairly and without delay, and that members conduct themselves appropriately. However, reasonable rules and regulations in support of these commendable goals must be enforced uniformly and without regard to a member's sexual orientation. Should LaSalle wish to limit socializing in their workout room for a valid business reason, they must uniformly enforce such a policy. A right to converse with another in a public place should not and cannot be predicated solely upon an individual's sexual orientation.

■ 3. Appeals of hearing decisions from the Minneapolis Civil Rights Commission are to be conducted by the court of appeals pursuant to the Administrative Procedure Act (APA), Minn.Stat. §§ 14.-01–.70 (1984). *Hennepin County v. Civil Rights Commission of Minneapolis,* 355 N.W.2d 458 (Minn.Ct.App.1984).

■ Under the APA, the scope of review by this court on appeal is limited. *State by Gomez-Bethke v. Douglas County Auditor,* 347 N.W.2d 541, 542 (Minn.Ct.App. 1984). This court does not institute a review of the evidence such as would constitute a de novo hearing. This court reviews the evidence only to determine if the Commission's findings are supported by substantial evidence in view of the entire record as submitted. Minn.Stat. § 14.69(e) (1984).

■ A review of the record here indicates that the Commission's findings are supported by substantial evidence.

4. LaSalle next argues that the Commission erred when it awarded Potter punitive damages in the amount of $1,000 in the absence of an award of compensatory damages.

■ Whether an award of punitive damages is proper in a civil rights action when there has been no award of compensatory damages has never directly been addressed on appeal in this state. However, in *City of Minneapolis v. Richardson,* 307 Minn. 80, 239 N.W.2d 197 (1976), an action pursuant to the Minnesota Human Rights Act, the supreme court did uphold a punitive damage award not accompanied by an award of actual or compensatory damages. Furthermore, in *Richardson,* the court noted that punitive damages pursuant to the Minnesota Human Rights Act should be broadly allowed regardless of the amount of traditional pecuniary damage suffered by the aggrieved party. *Id.* at 204.

While this action is pursuant to the Ordinance and not the state civil rights act, both constitute remedial civil rights legislation, and there appears to be no justification to support the narrow interpretation of the Ordinance urged by LaSalle regarding punitive damages.

■ LaSalle also argues that the Commission's award of punitive damages to

Potter is improper because there is not clear and convincing evidence that the conduct of LaSalle shows a willful indifference to Potter's rights. *See* Minn.Stat. § 549.20 (1984). LaSalle urges that its actions were taken under a good faith interpretation of the Ordinance and for legitimate business reasons. They argue that their conduct is not sufficiently egregious to merit an award of punitive damages. The record does not support LaSalle's argument. The enforcement of a policy which prohibits an individual from conversing with another merely on the basis of sexual orientation does indeed constitute conduct sufficiently egregious to warrant the granting of punitive damages.

5. Finally, LaSalle appeals from the Commission's award of attorney's fees. It recognizes, however, that appeal on this issue would be valid only if this court did not sustain the Commission's findings of discrimination. LaSalle acknowledges that the amount of the award does not constitute an abuse of discretion.

■ On appeal, Potter seeks review of the attorney's fees award, arguing that $1,000 is insufficient, and that $4,302.50 should have been awarded. He also requests that this court award reasonable attorney's fees on appeal. However, Potter did not file a notice of review pursuant to Minnesota Rule of Civil Appellate Procedure 106. Consequently, he did not preserve the issue of sufficiency of the attorney's fees award and we cannot address it here. This court, in its discretion, makes no award of attorney's fees on appeal. *See* Minn.Stat. § 363.14, subd. 3 (1984).

### DECISION

1. Potter established a prima facie case of discrimination on the basis of affectional preference pursuant to the Minneapolis Civil Rights Ordinance.

2. The enforcement of LaSalle's policy prohibiting "improper" socializing against Potter in this situation does not constitute the enforcement of a reasonable business regulation.

3. The Commission's finding of discrimination is supported by substantial evidence in the record.

4. The Commission's award to Potter of punitive damages is proper notwithstanding the fact that compensatory damages were not awarded.

5. The issue of additional attorney's fees for Potter's counsel is not properly before this court.

Affirmed.