Donald E. POTTER,
complainant, Respondent,

v.

LaSALLE COURT SPORTS &
HEALTH CLUB, petitioner,
Appellant.

No. C7–84–2000.

Supreme Court of Minnesota.

April 11, 1986.

Steven D. Jamar, Clyde F. Anderson, Minneapolis, for appellant.

Mark Alexis Masica, Joyce C. Yetter, Minneapolis, for respondent.

SIMONETT, Justice.

We affirm, as did the court of appeals, a decision of the Minneapolis Civil Rights Commission awarding complainant punitive damages and attorney fees against a health club for discrimination on the basis of affectional preference, in violation of a city ordinance.

Complainant-respondent Donald E. Potter was a member of the appellant LaSalle Court Sports & Health Club. One day in April 1983, Potter, while weight lifting at the club, put down the dumbbells he had been using to talk to a fellow club member about treatment for Potter's strained elbow. The two men talked for 2 to 3 minutes, during which time a LaSalle employee, Paul Loso, came over and asked if they "needed a program," and then returned a second time to tell the men to stop talking and to resume their workouts or leave. Loso explained there were rules against tying up equipment. In fact, only a few people were in the workout room at the time, and other dumbbells were available. When Potter and his friend said they were merely taking a short break, Loso told them, according to Potter, to "shut-up" and to "workout or leave." Potter left. Potter is a homosexual, as was his companion. Subsequently Potter filed a discrimination complaint with the Minneapolis Civil Rights Commission alleging discrimination by the club because he was homosexual.

At the commission hearing held in August 1984, the club employee, Loso, agreed that he had told Potter and his friend to work out or leave. He said the two men were tying up the equipment and "creating a gay atmosphere." Two members of LaSalle's management testified that Loso's actions were in accordance with club policy. These officers explained that the LaSalle club had become popular among male homosexuals, many of whom engaged in open, flagrant sexual behavior on the club premises, to the serious detriment of the club. As a consequence, management formulated a series of rules, unwritten at the time of the Potter incident, to reduce or eliminate the "gay atmosphere" by, among other things, preventing or discouraging homosexual members from congregating and loitering in the workout room.

The commission found that Potter had not violated any club rules, nor had he tied up any equipment, nor had he done anything other than converse with a fellow member during an exercise break. The commission concluded that LaSalle had engaged in an unfair discriminatory practice by denying Potter, a homosexual, "the opportunity to engage in conversation." Potter was awarded $1,000 punitive damages and $1,000 attorney fees. On appeal, the court of appeals affirmed, holding that: (1) the commission's findings are supported by substantial evidence; (2) a specific legal injury is not a necessary element of complainant's prima facie case; (3) LaSalle's rules against socializing are not a valid defense due to nonuniform enforcement; and (4) punitive damages are recoverable even in the absence of actual damages. *Potter v. LaSalle Sports & Health Club,* 368 N.W.2d 413 (Minn.Ct.App.1985). We granted LaSalle's petition for further review.

1. First of all, LaSalle does not assert that the City of Minneapolis may not adopt an ordinance prohibiting discrimination on the basis of affectional preference. No issue of the constitutionality or validity of the ordinance is brought before us. In-

deed, LaSalle declares "with utmost clarity" that it "does not object in any way to homosexuals being members," but only that it seeks to regulate the offensive behavior of homosexual members. What this case comes down to, then, is not whether the LaSalle Court Sports & Health Club may prohibit misconduct on its premises (of course it may); nor whether homosexuals have misbehaved at the club (for some clearly have); but whether Potter misbehaved. The commission found he had not, and this finding is supported by substantial evidence.

2. LaSalle argues that complainant failed to establish a prima facie case of discrimination. First, the club contends that "actual" or "legal" injury is a necessary element of a discrimination claim and that telling a member to "workout or leave" is too trivial a matter to be an injury. Second, the club contends that the city's ordinance prohibits discrimination on the basis of a person's *beliefs*, not *conduct*, and that Potter had failed to show the club acted against him for his beliefs rather than his conduct. There is no merit to either contention.

 The Minneapolis Civil Rights Ordinance prohibits discrimination in public accommodations because of "race, color, creed, religion, ancestry, national origin, sex, *affectional preference*, disability, marital status, or status with respect to public assistance." Mpls. Code Ord. § 139.40(h) (emphasis added). Discrimination is defined as "any act, attempted act, policy or practice which results in the unequal treatment, separation or segregation of or which otherwise adversely affects any person who is a member of a class protected * * *." Mpls.Code Ord. § 139.20(h). Potter, as a member of the club against whom the club's policy was applied, has standing, *i.e.*, an injury in fact, to bring this complaint. There is no need for any separate tort to establish a "legal" injury and the ordinance requires none. As the court of appeals correctly stated: "When an individual or a company has been held to have violated the provisions of a specific civil rights law, the act of discrimination itself constitutes sufficient injury for the law to provide a remedy, in the absence of statutory language requiring more." 368 N.W.2d at 416. The ordinance prohibits discrimination on the basis of "affectional preference." LaSalle says "preference" refers only to beliefs, not to overt conduct based on those "beliefs." It is enough to say here that the evidence supports the commission's finding that Potter was told to workout or leave simply because of his sexual orientation, not because of any inappropriate conduct.

 3. LaSalle next argues, even if a prima facie case of discrimination was established, that its "workout or leave" policy was justified by business necessity. We believe a Title VII analysis is applicable to the Minneapolis Civil Rights Ordinance. *See Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 441 (Minn.1983) (Title VII principles apply to the Minnesota Human Rights Act). The court of appeals properly used Title VII principles in analyzing whether, after complainant made out a prima facie case, LaSalle articulated a legitimate, nondiscriminatory reason for its actions. "If such a nondiscriminatory rationale can be articulated," said the court of appeals, "the burden then reverts to the complainant to show discriminatory intent." 368 N.W.2d at 416, *citing Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983). LaSalle presented persuasive evidence that its business was being jeopardized by wanton and unsavory sexual activity on the club premises, primarily by male homosexuals. To meet this problem, it was necessary for the club to regulate the congregating and socializing of its members. Presumably, the club could prohibit Potter from even engaging in innocent socializing if everyone else was also prohibited. But even if we assume this was the rule, it was not applied in a nondiscriminatory manner. The commission found that club policy against socializing and conversing during exercise was not enforced with the same strictness against heterosexuals. Moreover, there was evidence of different rules for homosexuals. Loso so testified, and the club's own rules, later reduced to writing as the "LaSalle Sodomite Regulations," confirm

an intent to treat heterosexuals and homosexuals differently. As the court of appeals observed, "[a] right to converse with another in a public place should not and cannot be predicated solely upon an individual's sexual orientation." 368 N.W.2d at 417.

4. LaSalle next argues that it was error to grant complainant punitive damages; first, because punitive damages cannot be awarded in the absence of compensatory damages, and, second, because in any event, LaSalle had acted in good faith and not in willful indifference of complainant's rights. The Minneapolis ordinance says the commission "may order" compensatory damages, "and in all cases, may also order" punitive damages. Mpls. Code Ord. § 141.50(1). In *City of Minneapolis v. Richardson*, 307 Minn. 80, 239 N.W.2d 197 (1976), construing similar language in the Minnesota Human Rights Act, we upheld an award of punitive damages despite the absence of a compensatory award. The federal courts uniformly allow punitive damages unaccompanied by compensatory damages.[1] Recently, in *Jacobs v. Farmland Insurance Co.*, 377 N.W.2d 441 (Minn.1985), we recognized the general rule that punitive damages are not recoverable in the absence of actual damages, but noted an exception to this rule in actions for defamation per se, when we have allowed punitive damages without actual damages in recognition of "the intangible harm caused by false, irresponsible accusations and the need for discouraging such conduct in the interests of social harmony," *Loftsgaarden v. Reiling*, 267 Minn. 181, 183–84, 126 N.W.2d 154, 155–56 (1964), *cert. denied*, 379 U.S. 845, 85 S.Ct. 31, 13 L.Ed.2d 50 (1964). Like defamation, the harm caused by discrimination can be intangible yet disruptive of social harmony. We hold that punitive damages are recoverable in a civil rights discrimination action in the absence of actual or compensatory damages.[2] We also agree with the court of appeals that LaSalle's "enforcement of a policy which prohibits an individual from conversing with another merely on the basis of sexual orientation does indeed constitute conduct sufficiently egregious to warrant the granting of punitive damages."

LaSalle claims it was confronted with "unseemly, immoral, illegal, or improper conduct" on its premises, and that it was entitled to do something about it. We agree, and we can understand LaSalle's frustration and concern. But this case is about Potter's conduct, not that of others. Offensive sexual behavior may sometimes take subtle forms of innuendo and harassment and be difficult to describe, but here there is simply no evidence of anything improper by Potter and his companion, whether of speech, gesture, or body language. Neither is there any evidence that Potter, who had been a member of the club for several years, or his companion, had ever before been involved in improper conduct.

Affirmed.

YETKA and KELLEY, JJ., concur specially.

COYNE, J., took no part in the consideration or decision of this case.

YETKA, Justice (concurring specially).

I concur in the majority opinion, but only because, in our role as an appellate court, we should not substitute our own findings of fact for those of the commission. The record presents facts substantiating the commission's findings. Potter's case, however, was weak, in my opinion, and the commission could have found otherwise.

Appellant was in a difficult situation, and drastic steps were required to re-create

---

1. *E.g., Lamar v. Steele*, 693 F.2d 559, 563 (5th Cir.1982), *cert. denied*, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983); *Silver v. Cormier*, 529 F.2d 161, 163 (10th Cir.1976); *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir.1974); *Stolberg v. Board of Trustees*, 474 F.2d 485, 489 (2nd Cir. 1973); *Rogers v. Loether*, 467 F.2d 1110, 1112 n.4 (7th Cir.1972), *aff'd sub. nom., Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *see also Carlson v. Green*, 446 U.S. 14, 22 n.9, 100 S.Ct. 1468, 1473 n.9, 64 L.Ed.2d 15 (1980).

2. We might add that the concern expressed in *Jacobs* for some restraint over punitive damages is partially addressed by the $6,000 limit the ordinance places on punitive damages.

conditions under which the club could prosper. The owners of the club were concerned that, unless changes were made, the club could not continue to operate profitably. At oral argument, counsel for appellant stated that, in its effort to save the club, heterosexuals would not have been treated any differently if the manager were under the impression that improper heterosexual contact was occurring or about to occur. Appellant felt forced to take overall strong action to improve the reputation of the club or it would face closing. Indeed, even with these efforts, the club closed shortly after the incident that gave rise to this litigation. It almost appears that there was more to this case than the record indicates, but we are left to conjecture as to what those factors might have been.

While the applicable standard of review requires me to concur in the majority opinion, I am left with the uncomfortable feeling that justice may not have been done in this case.

KELLEY, Justice (concurring specially).

I join in the concurrence of Justice Yetka.