[No. 9132–5–III.   Division Three.   January 12, 1989.]

CHARLES LEWIS, *Appellant*, v. JILL DOLL, ET AL,
*Respondents*.

MUNSON, J., dissents by separate opinion.

*Douglas Peters* and *Peters, Schmalz, Fowler & Inslee,* for appellant.

*Gary Lofland* and *Ryan Edgley,* for respondents.

*Kenneth O. Eikenberry, Attorney General,* and *Winslow Whitman, Assistant,* amici curiae for appellant.

RIPPLE, J.*—Charles Lewis sued Jill Doll, owner of a 7–Eleven store, for damages resulting from an alleged discriminatory act. He appeals a defense verdict, assigning error to the trial court's decision to deny his motion for a directed verdict. We reverse, grant the motion, and remand for trial on damages.

During the evening of June 24, 1985, Mr. Lewis, a young black man, and five black friends stopped to purchase Slurpees at a 7–Eleven store at Terrace Heights in Yakima. Accompanied by his friend, Cheri Jones, he opened the store's door but the clerk immediately ordered him out. Mr. Lewis then reported:

> I looked around to see if a dog was at my feet or something. He said, "Yes, you. Out." So I proceeded to walk up to the counter and I asked him, "I'd like to purchase a couple slurpees." He said, "No, we have a policy. Boss left strict orders not to serve any blacks." He said, "I don't serve any blacks." He said, "We have been having problems with blacks coming in shoplifting."

---

*Judge John J. Ripple is serving as a Judge Pro Tempore of the Court of Appeals pursuant to RCW 2.06.150.

The situation was discussed for approximately 10 to 15 minutes, then Mr. Lewis exited and called the police from a pay phone. Sergeant Bradford arrived 3 to 5 minutes later, talked with Mr. Lewis and then entered the store. After exiting, he told Mr. Lewis and his friends they would not be served unless they entered the store two at a time, because the store had recently experienced a problem with blacks shoplifting. However, at that time neither clerk in the store identified Mr. Lewis or any of his party as a suspected shoplifter. At that same moment, a group of white males entered the store, were served and exited. Mr. Lewis and his friends then left.

Mr. Lewis filed a complaint with the Human Rights Commission; he later withdrew that complaint, consulted an attorney, and filed this action. The dispositive issue is whether he was entitled to a directed verdict as a matter of law. Did the words uttered by the store clerk and his refusal to serve Mr. Lewis violate Mr. Lewis' civil rights, notwithstanding any subsequent rationale the clerk may have developed for his actions?

RCW 49.60.030 provides, in part:

(1) The right to be free from discrimination because of race, creed, color, national origin, sex, or the presence of any sensory, mental, or physical handicap is recognized as and declared to be a civil right. This right shall include, but not be limited to:

. . .

(b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement;

This is read in conjunction with RCW 49.60.215:

It shall be an unfair practice for any person or his agent or employee to commit an act which directly or indirectly results in any distinction, restriction, or discrimination, . . . or the refusing or withholding from any person the admission, patronage, custom, presence, frequenting, dwelling, staying, or lodging in any place of public resort, accommodation, assemblage, or amusement, except for conditions and limitations established

by law and applicable to all persons, regardless of race, creed, color, national origin, . . . *Provided, That behavior or actions constituting a risk to property or other persons can be grounds for refusal and shall not constitute an unfair practice.*

(Italics ours.)

To aid in construing RCW 49.60, this court can review relevant federal cases. *Reese v. Sears, Roebuck & Co.,* 107 Wn.2d 563, 575, 731 P.2d 497 (1987). When a discrimination claim arises in the context of employment law, the plaintiff's evidence must establish a prima facie case of discrimination; the burden of going forward with the evidence then shifts to the defense to justify the alleged discriminatory act. At all times, the plaintiff continues to carry the burden of persuasion; after the defense rests, the plaintiff is then entitled to an opportunity to show the defense advanced was, in fact, pretext. *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 362, 753 P.2d 517 (1988) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). *See also United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983); *Texas Dep't of Comm'ty Affairs v. Burdine,* 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). As noted in *Aikens,* 460 U.S. at 715–16, 75 L. Ed. 2d at 410–11:

> On the state of the record at the close of the evidence, the District Court in this case should have proceeded to this specific question directly, just as district courts decide disputed questions of fact in other civil litigation. As we stated in *Burdine:*
> > "The plaintiff retains the burden of persuasion. . . . [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U. S., at 256.
> In short, the district court must decide which party's explanation of the employer's motivation it believes.

(Footnote omitted.) The presence of discrimination is ultimately a factual issue. *Shannon v. Pay 'N Save Corp.,* 104

Wn.2d 722, 728, 709 P.2d 799 (1985). Also, as noted in *Hollingsworth v. Washington Mut. Sav. Bank,* 37 Wn. App. 386, 392, 681 P.2d 845, *review denied,* 103 Wn.2d 1007 (1984): "The ultimate issue of discrimination is to be treated by courts in the same manner as any other issue of fact." (citing *Aikens*).

Mr. Lewis' motion for a directed verdict after the presentation of evidence was denied as was his motion for a judgment n.o.v. or new trial. The standard of review for reviewing both motions is essentially the same:

> Both motions admit the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 554 P.2d 1041 (1976). The trial court has no discretion and may grant the motion only where there is no competent evidence nor reasonable inference which would sustain a jury verdict in favor of the nonmoving party. If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury. *Rasor v. Retail Credit Co., supra; Shelby v. Keck,* 85 Wn.2d 911, 541 P.2d 365 (1975).

*Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978); *Riggins v. Bechtel Power Corp.,* 44 Wn. App. 244, 249, 722 P.2d 819, *review denied,* 107 Wn.2d 1003 (1986). Thus, this court must affirm the jury verdict unless we can say, as a matter of law, the defense was pretext.

In support of his contention he is entitled to a directed verdict, Mr. Lewis cites *Anderson v. Pantages Theatre Co.,* 114 Wash. 24, 194 P. 813 (1921), which involved a black man who was denied access to the main floor of a theater. The court affirmed a judgment in his favor of $300. *See also Browning v. Slenderella Sys.,* 54 Wn.2d 440, 341 P.2d 859 (1959) (black woman denied use of a reducing salon's services because of her race); *Randall v. Cowlitz Amusements, Inc.,* 194 Wash. 82, 76 P.2d 1017 (1938) (jury awarded $300 judgment in favor of a black patron who was ejected from his theater seat solely because of his color).

First, we conclude Mr. Lewis established a prima facie case of discrimination. In *Ledsinger v. Burmeister,* 114 Mich. App. 12, 318 N.W.2d 558 (1982) the plaintiffs appealed a dismissal of their action by summary judgment. The plaintiffs had contracted with the defendant to purchase certain auto parts. When one of the plaintiffs returned to the defendant's business to pay the balance due, he was told the price had increased, called a "nigger" in front of other customers, and told to get his "black ass" out of the store, because the store owner "'did not want or need nigger business'". *Ledsinger,* at 16.

In reviewing the plaintiffs' third cause of action which alleged a violation of the state civil rights act, *Ledsinger,* at 23 noted:

> An inference that might fairly be drawn from plaintiff's allegations is that defendant ultimately denied Mr. Ledsinger the sale of goods because of Ledsinger's race, MCL 37.2302(a); MSA 3.548(302)(a). Moreover, defendant's alleged statement that he "did not want or need nigger business", if established, would constitute the publication of a statement that full and equal enjoyment of the goods sold at defendant's establishment would be withheld on the basis of race. MCL 37.2302(b); MSA 3.548(302)(b). Therefore, plaintiffs' complaint appears to set forth two violations of the Elliott–Larsen Civil Rights Act.

The court also concluded the plaintiffs had established a cause of action for violation of Michigan's public accommodations law and remanded the case for trial.

After establishing a prima facie case, the burden of going forward shifts to the defense which must attempt to justify the alleged discriminatory policy. Ms. Doll argues she is entitled to protect her store from shoplifters and that her policy of excluding blacks or limiting their numbers in her store was a legitimate business policy, citing RCW 49.60-.215 which permits refusal of service based upon "behavior or actions constituting a risk to property or other persons . . ."

In *Potter v. LaSalle Sports & Health Club,* 368 N.W.2d 413 (Minn. Ct. App. 1985), *aff'd,* 384 N.W.2d 873 (Minn. 1986), a homosexual member of a sports and health club filed a discrimination action against the club, alleging he had been denied full enjoyment of its facilities because of his sexual orientation. While engaged in a conversation with another member, he was approached by a health club employee and told to either resume his workout or leave. There was no evidence the two men were engaging in any inappropriate conduct. The Civil Rights Commission found the health club had discriminated against the appellant.

The court sympathized with the club's desire to confront and eliminate inappropriate sexual contact between its members. However, *Potter,* 368 N.W.2d at 417, noted:

[W]e must recognize, as did the Commission, that Potter never was accused of inappropriate behavior. The Commission found him to be engaged in an innocent conversation regarding an injury. In such a context, the confrontation of Potter by Loso appears impelled, not by the inappropriateness of Potter's conduct, but rather by the fact that Potter is a homosexual engaged in conversation with another homosexual. LaSalle's argument of a valid defense must fail and Potter's prima facie case stands unrebutted.

Similarly, in *Blanding v. Sports & Health Club, Inc.,* 373 N.W.2d 784 (Minn. Ct. App. 1985), *aff'd,* 389 N.W.2d 205 (Minn. 1986), the court considered a second case of discrimination based upon sexual orientation arising out of the operation of the same health club. In affirming a finding of discrimination, the court noted, at pages 791–92:

The Club asserts that conditions at the LaSalle facility made it necessary to implement rules against improper socializing and offensive conduct which creates a homosexual atmosphere. It further asserts that their rules constitute an affirmative defense to Blanding's complaint.

We understand that the Club's obligation to its members may necessitate reasonable rules and regulations. These rules and regulations must be enforced uniformly and without regard to a member's sexual orientation.

*Potter.* In this case there is no finding that Blanding's quick dance constituted offensive conduct, and there are no grounds for making such a finding. Given the circumstances, the Club's assertion that its rules are an affirmative defense must fail. *See Potter.*

██ ██ Thus, we interpret that portion of RCW 49.60.215 which permits refusal of service to apply only to situations where there is objective evidence a particular individual is engaging in or has in the past engaged in improper conduct. Refusal of service cannot be predicated solely because of race. *Potter,* 384 N.W.2d at 876:

> LaSalle claims it was confronted with "unseemly, immoral, illegal, or improper conduct" on its premises, and that it was entitled to do something about it. We agree, and we can understand LaSalle's frustration and concern. But this case is about Potter's conduct, not that of others. Offensive sexual behavior may sometimes take subtle forms of innuendo and harassment and be difficult to describe, but here there is simply no evidence of anything improper by Potter and his companion, whether of speech, gesture, or body language. Neither is there any evidence that Potter, who had been a member of the club for several years, or his companion, had ever before been involved in improper conduct.

Nor is the fact Ms. Doll did not intend a discriminatory effect relevant. *Phiffer v. Proud Parrot Motor Hotel, Inc.,* 648 F.2d 548, 551 (9th Cir. 1980) (under 42 U.S.C. § 1982, racial motivation is not an element of a prima facie case; only a racial impact need be shown).

The rules and procedures designed to prevent shoplifting in Ms. Doll's store must be enforced uniformly and without regard to a customer's race. The policy of the store failed in this respect, for the words of the store clerk were that *all* blacks would not be served. When confronted by Sergeant Bradford he later qualified his statement and offered service if they entered two at a time. The record is devoid of any evidence which purports to accuse Mr. Lewis' companions of shoplifting, either at the time of or prior to the incident before us. With respect to Mr. Lewis, the accusations were made after the fact and only by witnesses who

were closely connected to the operation of the store. No charges of shoplifting were ever filed against Mr. Lewis nor does the record contain evidence Mr. Lewis had ever been convicted of shoplifting. He was denied service solely because of his race.

In *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1040 (2d Cir. 1979), the court refers to defenses which are subjective in nature:

> In evaluating the proposed justifications, the district court must carefully scrutinize suggested reasons that are not objective in nature. In cases in which discriminatory intent could be inferred from the sequence of events, the courts have generally viewed subjective explanations with considerable skepticism. The wisdom in such skepticism is obvious. "*Any* defendant can respond to a discriminatory effect with a claim of some subjective preference or prerogative and, if such assertions are accepted, prevail in virtually every case." Comment, *Applying the Title VII Prima Facie Case to Title VIII Litigation,* 11 Harv.C.R.–C.L.L.Rev. 128, 182 (1976) (emphasis in original).

*Robinson* continues, at page 1043:

> In sum, therefore, in order for the corporation to prevail, the district court must find that racial motivation did not play any role in the decision to deny Robinson's application. In its deliberations, the court must remember that "clever men may easily conceal their motivations." *United States v. City of Black Jack,* [508 F.2d 1179, 1185 (8th Cir. 1974), *cert. denied,* 422 U.S. 1042, 45 L. Ed. 2d 694, 95 S. Ct. 2656 (1975)]. "As overtly bigoted behavior has become more unfashionable, evidence of intent has become harder to find. But this does not mean that racial discrimination has disappeared." [*Metropolitan Housing Dev. Corp. v.*] *Village of Arlington Heights,* [558 F.2d 1283, 1290 (7th Cir. 1977), *cert. denied,* 434 U.S. 1025, 54 L. Ed. 2d 772, 98 S. Ct. 752 (1978)]. It means that when a discriminatory effect is present, the courts must be alert to recognize means that are subtle and explanations that are synthetic.

Thus, after viewing the evidence and all reasonable inferences drawn therefrom in favor of Ms. Doll, we conclude as

a matter of law, the defense raised was without a legal foundation. The court erred when it submitted the question of discrimination to the jury.

Upon remand, the jury will be confronted with the issue of damages. Mr. Lewis will have an opportunity to present evidence of actual damages, which may be rebutted by Ms. Doll. If no actual damage is shown, nominal damages will be presumed. *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 450–51, 341 P.2d 859 (1959); *Miles v. F.E.R.M. Enters., Inc.*, 29 Wn. App. 61, 68, 627 P.2d 564 (1981) (citing *Basista v. Weir,* 340 F.2d 74 (3d Cir. 1965)). The trial court should also award a reasonable attorney fee to Mr. Lewis based upon work done at the trial and appellate levels, as provided in RCW 49.60.030(2).

We reverse the jury's verdict, grant the motion for a directed verdict, and remand the cause for a determination of damages, costs and reasonable attorney fees.

THOMPSON, C.J., concurs.

MUNSON, J.—I dissent. As repulsive as the store clerk's statements were, it is not for this court to decide questions of fact and convert them into matters of law. I agree with everything my honored brethren state, except the last three paragraphs.

This case was tried before a jury; the rule governing directed verdicts is correctly stated. At trial, the plaintiff must establish a prima facie case; having once done so, the burden of going forward shifts to the defendant. Once the defendant has met his burden, the plaintiff is given the opportunity to show that conduct justification is mere pretext or that its genesis was created after the incident. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

There is no reason why the usual trial procedure and burdens should be different in a discrimination case than in any other case. *Hollingsworth v. Washington Mut. Sav.*

*Bank,* 37 Wn. App. 386, 392, 681 P.2d 845, *review denied,* 103 Wn.2d 1007 (1984).

Here, Mr. Lewis made more than a prima facie case; Ms. Doll assumed her burden of going forward. She and a clerk testified at trial that they recognized Mr. Lewis as a person who had shoplifted in her store several days before this incident. Thus, her defense was that service had been denied, not because of Mr. Lewis' race, but because of his prior conduct. *Marquez v. UW,* 32 Wn. App. 302, 648 P.2d 94 (1982) (termination of law school student), *cert. denied,* 460 U.S. 1013 (1983). The burden of persuasion as to the validity of his cause remained with Mr. Lewis; the jury found for Ms. Doll. Thus, Mr. Lewis did not carry his burden of persuasion. It makes no difference whether this court believes the defense's testimony was a pretext or postincident conjecture in justification; it is outside the scope of our judicial obligation. *State v. Black,* 100 Wn.2d 793, 802, 676 P.2d 963 (1984).

If there is evidence to support the decision of a trier of fact, that decision stands. Whether the defense's testimony and justification is a pretext is for a trier of fact; it is not to be decided as a matter of law nor as a factor in the mitigation of damages.

Therefore, I dissent and would affirm the judgment of the trial court based upon the jury's verdict.

Reconsideration denied March 9, 1989.

Review denied at 112 Wn.2d 1027 (1989).