# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 22-1613

———————————————————

Larry Johnson

*Plaintiff - Appellant*

v.

Schulte Hospitality Group, Inc.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: February 15, 2023
Filed: May 2, 2023

——————————

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

——————————

BENTON, Circuit Judge.

After an overnight stay at the Sheraton St. Paul Woodbury Hotel, Larry Johnson sued the Schulte Hospitality Group, Inc. for discrimination and unfair reprisal. The district court[1] granted summary judgment to the Hotel because it

———————————————————

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

provided unrebutted, non-pretextual justifications for its treatment of Johnson, and he did not show a causal link between his complaint of discrimination and the Hotel's adverse actions. Johnson appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Larry Johnson stayed at the Sheraton St. Paul Woodbury Hotel on June 4, 2020. He sued for violations of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.11, subd. 1(a); 363A.15; and 42 U.S.C. § 1981, alleging discrimination because of his race and unlawful reprisal. The district court granted summary judgment to the Hotel.

Johnson appeals, alleging (i) discrimination in violation of the MHRA, (ii) reprisal for complaining about the discrimination in violation of the MHRA, (iii) discrimination in violation of § 1981, and (iv) retaliation for complaining about the discrimination in violation of § 1981. "This court reviews de novo a grant of summary judgment. Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), *quoting* **Fed. R. Civ. P. 56(c)(2)**.

II.

Johnson claims discrimination on account of his race, in violation of the MHRA. "It is an unfair discriminatory practice . . . to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race . . . ." **Minn. Stat. § 363A.11, subd. 1(a)(1)** (2022). Minnesota courts use the *McDonnell-Douglas* framework to assess MHRA claims. *See* **Hubbard v. United Press Int'l, Inc.**, 330 N.W.2d 428, 441 (Minn. 1983), *citing* **McDonnell-Douglas Corp. v.**

-2-

***Green***, 411 U.S. 792 (1973). The *McDonnell-Douglas* framework "consists of a prima facie case, an answer, and a rebuttal." ***Id.*** "In the public-accommodations context, the elements of a prima facie case are: (1) the plaintiffs are members of a protected class; (2) the defendant discriminated against plaintiffs regarding the availability of its facility; and (3) the discrimination was because of plaintiffs' membership in the protected class." ***Monson v. Rochester Athl. Club***, 759 N.W.2d 60, 63 (Minn. App. 2009), *citing* ***Potter v. LaSalle Sports & Health Club***, 368 N.W.2d 413, 416 (Minn. App. 1985).

> If the party establishes a prima facie case of discrimination, the second part of the *McDonnell-Douglas* framework applies, and the burden shifts to the place of public accommodation to articulate a legitimate, nondiscriminatory reason for its actions. If the place of public accommodation carries its burden, the third part of the *McDonnell-Douglas* framework applies, and the party must then prove, by a preponderance of the evidence, that the stated reasons for the actions of the place of public accommodation were not true reasons but instead amount to a pretext for discrimination.

***Aromashodu v. Swarovski N. Am. Ltd.***, 981 N.W.2d 791, 796 (Minn. App. 2022) (citations omitted). *See also* ***Lucke v. Solsvig***, 912 F.3d 1084, 1087-88 (8th Cir. 2019) (same); ***Young v. Builders Steel Co.***, 754 F.3d 573, 578 (8th Cir. 2014) (same). "A party may establish the presence of a discriminatory motive through indirect evidence." ***Aromashodu***, 981 N.W.2d at 796. "Indirect evidence includes . . . proof that the treatment of the complainant was so at variance with what would reasonably be anticipated absent discrimination that discrimination is the probable explanation." ***Id.***

Johnson, a frequent Marriott guest and "silver elite" Bonvoy member, argues that the treatment he received during his stay at the Hotel "was so at variance with what would reasonably be anticipated absent discrimination that discrimination is the probable explanation." ***Id.*** Johnson claims he was locked out of the main entrance, greeted inhospitably, forced to provide proof of his Marriott-sponsored Bonvoy rewards program membership at check-in, assigned to a room with dirty

bedding, required to bring it to the front desk to exchange for clean bedding, forced to change the bedding himself, and denied a request to switch rooms. (The Hotel gave Johnson a full refund for his stay.)

The Hotel counters that, even if Johnson presented a prima facie case, the Hotel articulated legitimate, nondiscriminatory reasons for Johnson's treatment. As a result of local social protests and the COVID-19 pandemic, the Hotel maintained a locked entrance, relied on enhanced check-in procedures, reduced its maintenance and custodial staffing, discontinued daily housekeeping, discouraged guests from switching rooms, closed down its restaurant and two floors of rooms to reduce costs, and staffed shifts with only one front-desk employee. The Hotel emphasizes that Johnson's stay at the Hotel occurred during the early months of the COVID-19 pandemic when businesses adopted ad hoc policies in response to an extraordinary, evolving medical and regulatory landscape. *Cf.* ***In re Rutledge***, 956 F.3d 1018, 1023 (8th Cir. 2020) (acknowledging the "unprecedented health crisis occasioned by the worldwide COVID-19 pandemic"); ***Democratic Nat'l Comm. v. Wisconsin State Legis.***, 141 S. Ct. 28, 32 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay) ("[F]ederal judges do not possess special expertise or competence about how best to balance the costs and benefits of potential policy responses to the [COVID-19] pandemic . . . ."); ***Abbey Hotel Acquisition, LLC v. National Sur. Corp.***, No. 21-CV-3506, 2021 WL 4522950, at *1 (S.D.N.Y. Oct. 1, 2021) ("The COVID-19 pandemic has upended the daily operations of businesses around the country in ways few could have anticipated. Hotels, restaurants, and retailers, among many others, have struggled to find their footing in the midst of changing scientific guidance and local regulations.").

Johnson claims these reasons are pretextual. His only comparator is the treatment of an (apparently) white guest checking in shortly after Johnson. According to Johnson, the Hotel did not greet this guest with the same hostility he experienced. But the Hotel presented evidence that, due to local social protests and COVID-19, it locked the front door and posted signs asking guests to use the external

-4-

phone to call the front desk. Johnson did not follow these instructions. The other guest called the front desk upon arrival.

Johnson fails to show that the Hotel's reasons are pretextual. He has not provided sufficient probative evidence to support a finding that his treatment in the Hotel was so at variance with the treatment expected of premium hotels during the early months of the COVID-19 pandemic. The district court properly granted summary judgment to the Hotel on the MHRA discrimination claim.

III.

Johnson claims the Hotel violated the unfair reprisal provision of the MHRA by retaliating against him after he complained to the assistant manager. The MHRA prohibits a place of public accommodation from "intentionally engag[ing] in any reprisal against any person because that person . . . opposed a practice forbidden under this chapter." **Minn. Stat. § 363A.15(1)** (2022). "A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment." **Minn. Stat. § 363A.15** (2022). "Under the MHRA, '[a] reprisal claim is analyzed under the *McDonnell-Douglas* burden-shifting test.'" **Chivers v. Wal-Mart Stores, Inc.**, 641 F.3d 927, 932 (8th Cir. 2011) (alteration in original), *quoting* **Colenburg v. Starcon Int'l, Inc.**, 619 F.3d 986, 994 (8th Cir. 2010), *quoting* **Hoover v. Norwest Private Mortg. Banking**, 632 N.W.2d 534, 548 (Minn. 2001). "To establish a prima facie case of retaliation under the MHRA, 'a[] [plaintiff] must show that (1) [he] engaged in protected activity, (2) the defendant took adverse action against [him], and (3) that there is a connection between the two.'" **Id.**, *quoting* **Colenburg**, 619 F.3d at 993.

"The timing of an adverse . . . action in connection with the protected activity can sometimes establish causation for purpose of establishing a prima facie case." **Green v. Franklin Nat'l Bank**, 459 F.3d 903, 915 (8th Cir. 2006). *See also* **Liles v. C.S. McCrossan, Inc.**, 851 F.3d 810, 819 (8th Cir. 2017) (acknowledging that reprisal claims under the MHRA "can be proven 'by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the [defendant] has

actual or imputed knowledge of the protected activity and the adverse . . . action follows closely in time'") *quoting* **Dietrich v. Canadian Pac. Ltd.**, 536 N.W.2d 319, 327 (Minn. 1995). "Generally, more than a temporal connection between the protected conduct and the adverse . . . action is required to present a genuine factual issue on retaliation." **Kiel v. Select Artificials, Inc.**, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc).

Johnson argues that, after he complained to the assistant manager of his treatment during his stay, the Hotel retaliated by calling the police to escort him out of the Hotel. The first and third elements are at issue.

As for the first element, Johnson may not be able to show that he engaged in a protected activity. He testified at length about his conversation with the assistant manager. According to him, during their conversation, he did not mention that his complaints were due to race: "I simply with respect complained about a service." *Cf.* **Bahr v. Capella Univ.**, 788 N.W.2d 76, 84 (Minn. 2010) ("If a practice is not unlawful under the plain terms of the MHRA, a party's belief that the practice is unlawful cannot be reasonable."); **Temple v. Metropolitan Council**, No. A17-0410, 2017 WL 6272716, at *11 (Minn. App. Dec. 11, 2017) ("Because Temple did not mention race or another protected characteristic under the MHRA, the district court concluded that Temple could not link his claim of harassment to a protected activity. . . . Temple claims that he reported the 'kind of conduct' that is prohibited by the MHRA and did not have to explicitly claim that the harassment was due to his race. But the MHRA provides that Temple must 'oppose[] a practice forbidden under this chapter.'"); **Hunt v. Nebraska Pub. Power Dist.**, 282 F.3d 1021, 1028-29 (8th Cir. 2002) (affirming dismissal of retaliation claim for failure to state a prima facie case where plaintiff did not expressly attribute her lack of a promotion to sex discrimination). Johnson may not be able to show that his complaints to the assistant manager constituted opposing a practice forbidden under the MHRA.

Even if Johnson could satisfy the first element, he cannot satisfy the third element: that the assistant manager called the police *because of* Johnson's complaint of discrimination.

The conversation between Johnson and the assistant manager was recorded, without audio, by the Hotel's security camera. Johnson and the assistant manager talk for about seven minutes before the assistant manager goes to call the police. Johnson's hand and arm gestures increase in sweep and emphasis throughout the conversation. After about five minutes, Johnson's gestures intensify, emphasizing his words with head nods and hand movements, using the full range of his wingspan. Another guest, walking through the lobby, slows down, turning his head to observe Johnson. The assistant manager testified that she called the police because Johnson became agitated, upset, and aggressive, "rais[ed] his voice and . . . turned around and started walking towards [her]," "walk[ed] around the lobby," and made her— the only employee then at the Hotel front desk—feel harassed and uncomfortable. Johnson testified he recounted his experience during his stay to the assistant manager and requested to be moved to a clean room for the remaining two-and-a-half hours of his stay until noon checkout. According to Johnson, the assistant manager denied his request, demanded he leave the property, and threatened to call the police.

Johnson's only evidence to support causality is an inference from temporal proximity. *See **Hill v. Walker***, 737 F.3d 1209, 1219 (8th Cir. 2013) ("Especially where the [defendant's] proffered reason for action is virtually contemporaneous with the protected activity, [this court] [is] disinclined to declare a genuine issue of fact for trial based on temporal proximity alone."); ***Kiel***, 169 F.3d at 1136 (requiring "more than a temporal connection"). *Cf. **Ebersole v. Novo Nordisk, Inc.***, 758 F.3d 917, 925 (8th Cir. 2014) ("The mere coincidence of timing, however, is rarely sufficient to establish the causation element. The temporal proximity must be extremely close to establish the causal connection without other evidence of discriminatory animus."); ***Smith v. Allen Health Sys.***, 302 F.3d 827, 833 (8th Cir. 2002) (two weeks between protected conduct and adverse action sufficient to

establish prima facie case). This court need not decide whether the temporal proximity here suggests a causal connection.

Johnson's behavior constituted intervening conduct that negated an inference of a causal connection. *See Kiel*, 169 F.3d at 1136 (holding that plaintiff's angry outbursts constituted "intervening unprotected conduct [that] eroded any causal connection . . . suggested by the temporal proximity of his protected conduct and [the adverse action]"). "The plaintiff in *Kiel* turned his protected activity into unprotected activity by being rude and disruptive to the work environment and that severed the causal connection." **Green**, 459 F.3d at 915, *citing Kiel*, 169 F.3d at 1136. *See also* **Mervine v. Plant Eng'g Servs., LLC**, 859 F.3d 519, 527 (8th Cir. 2017) ("Whatever causal inference that might have been drawn from the temporal proximity between [plaintiff's] protected activity and the termination of his employment was vitiated by the intervening . . . misconduct."); **Scroggins v. University of Minnesota**, 221 F.3d 1042, 1045 (8th Cir. 2000) (affirming summary judgment for defendant where plaintiff's inappropriate confrontations with a student-worker constituted "intervening unprotected conduct [that] eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination"); **Temple v. Metropolitan Council**, No. A17-0410, 2017 WL 6272716, at *12 (Minn. App. Dec. 11, 2017) (unpublished) ("Intervening events, such as employee complaints or additional misconduct, between protected activity and adverse action may defeat a[] [plaintiff's] retaliation claim, either as amounting to breaks in the causal chain or serving as the [defendant's] legitimate reasons for its actions."); **Lockridge v. Per Mar Sec. & Research Corp.**, No. 12-2894, 2014 WL 4626355, at *11 (D. Minn. Sept. 15, 2014) (Plaintiff's threatening and intimidating conduct and failure to perform work constituted intervening events that "erode[d] causal connection based on temporal proximity."), *aff'd*, 603 Fed. Appx. 522 (8th Cir. 2015). *Cf. Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 698 (8th Cir. 2006) (affirming summary judgment for defendant where plaintiff's deception constituted "intervening events [that] undermine[d] any causal inference that a reasonable person might otherwise have drawn from temporal proximity"); **Cheshewalla v. Rand & Son Constr. Co.**, 415 F.3d 847, 852 (8th Cir. 2005) (holding

that plaintiff's absences from work constituted an intervening event that eroded any causal connection "suggested by the temporal proximity of [plaintiff's] protected conduct and her layoff"); ***Hankins v. AirTran Airways, Inc.***, 237 Fed. Appx. 513, 521 (11th Cir. 2007) ("intervening act of misconduct" of yelling at co-worker "severed the causal connection (if any)"); ***Mizusawa v. United States Dep't of Labor***, 524 Fed. Appx. 443, 448 (10th Cir. 2013) ("[I]nferring a causal relationship between the protected activity and the adverse action is not logical when the two are separated by an intervening event that independently . . . caused the adverse action.").

Because Johnson cannot show that the Hotel called the police to escort him out of the Hotel *because of* his complaints, he fails to satisfy the third element of a prima facie case of MHRA unfair reprisal: "that the adverse action was causally linked to the protected conduct." ***Kiel***, 169 F.3d at 1136. *See **ACT, Inc., v. Sylvan Learning Sys.***, 296 F.3d 657, 666 (8th Cir. 2002) (While a plaintiff "is entitled to the benefit of all reasonable inferences that may be drawn from the evidence. It is not entitled . . . to the benefit of unreasonable inferences, those that amount to more than mere conjecture.").[2]

The district court properly granted summary judgment to the Hotel on the MHRA unfair reprisal claim.

---

[2]"To support [his] pretext argument, [Johnson] points to the same evidence [he] did to support the . . . finding of a causal connection." *See **Green***, 459 F.3d at 916. "Whether [this court] cabin[s] [its] examination of these intervening events under the third element of the prima facie case or under the subsequent step of defendant's legitimate, nondiscriminatory reason for its actions, the result is the same." ***Cheshewalla***, 415 F.3d at 852 (citation omitted). *Cf. **Green***, 459 F.3d at 916 ("[This court] need not decide the question of when or whether timing alone can establish a prima facie retaliation claim because we have said timing alone is insufficient to show a pretextual motive rebutting a legitimate, non-discriminatory reason for an adverse . . . action.").

IV.

Johnson claims the Hotel discriminated against him in violation of 42 U.S.C. § 1981.  "Section 1981(a) guarantees that 'all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens.'" *Green v. Dillard's Inc.*, 483 F.3d 533, 537-38 (8th Cir. 2007), *quoting* **42 U.S.C. § 1981(a)**.  Section 1981(b) "more fully defines the right 'to make and enforce contracts' as 'including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.*, *quoting* **42 U.S.C. § 1981(b)**.

To prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  To establish a prima facia case of racial discrimination under § 1981, a plaintiff must show "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009) (en banc).

As discussed, Johnson cannot show discriminatory intent on the part of the Hotel, and, even if he could, he fails to rebut the Hotel's non-pretextual justifications. The district court properly granted summary judgment to the Hotel on the § 1981 discrimination claim.

V.

Johnson claims the Hotel retaliated against him in violation of 42 U.S.C. § 1981, which encompasses retaliation claims. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008) ("[T]he view that § 1981 encompasses retaliation claims is indeed well embedded in the law.").  "In order to prove a prima facie case of

retaliation, the [plaintiff] must demonstrate that (1) [he] engaged in protected activity, (2) subsequent materially adverse action was taken against [him] by the [defendant], and (3) the materially adverse actions were causally linked to [the] protected activity." ***Ellis v. Houston***, 742 F.3d 307, 322-23 (8th Cir. 2014).

As discussed, Johnson fails to show that Hotel called the police to escort him out of the Hotel *because of* his complaint of discrimination. The district court properly granted summary judgment on the § 1981 retaliation claim.

\* \* \* \* \* \* \*

The judgment is affirmed.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I agree with the court that Johnson's race discrimination claims fail at the pretext stage. But in my view, genuine disputes of material fact remain on Johnson's unfair reprisal and retaliation claims, and I would reverse in part the grant of summary judgment.[3]

On review of a grant of summary judgment, it is not the role of the court to evaluate and weigh the proffered evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Instead, this court must view the evidence in the light most favorable to the non-moving party—Johnson—and must accord him the benefit of all reasonable inferences. Id. at 255; see Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 229 (8th Cir. 2011). Applying this standard, Johnson's claims for reprisal and retaliation survive.

---

[3]Because the same McDonnell-Douglas burden-shifting framework applies to Johnson's claims of unfair reprisal under the MHRA and retaliation under 42 U.S.C. § 1981, I analyze the two together.

-11-

Here, Johnson engaged in protected activity by reporting alleged acts of discrimination. The Hotel's assistant manager, a white woman, testified that Johnson, a Black man, met with her to complain about his room conditions, and during their conversation, he "essentially" accused her of "racially profiling him" due to Johnson's perceived mistreatment during his stay. Johnson, too, testified that he complained to the assistant manager that she appeared to treat and interact with a white guest more favorably than she did Johnson. Because Johnson complained of racial discrimination regarding the service he received and there is no dispute that the Hotel took an adverse action by ejecting him before the end of his stay, Johnson has satisfied the first and second element of his prima facie case, respectively.

Johnson has also provided sufficient evidence to satisfy the third element of his prima facie case—a causal connection between his complaints of racial discrimination and his ejection from the Hotel. As the court acknowledges, a close temporal proximity between an adverse action and a protected activity alone can establish causation, even if only in the unusual case. See Ebersole, 758 F.3d at 924–25; Green, 459 F.3d at 915–16. This is one such case. Here, the assistant manager called the police to remove Johnson from the Hotel about seven minutes after Johnson raised his complaints of racial discrimination. This temporal proximity—a matter of minutes—establishes a strong inference of retaliatory motive sufficient to show causation. See Donathan v. Oakley Grain, Inc., 861 F.3d 735, 742 (8th Cir. 2017) ("[T]emporal proximity generally is of greater inferential weight when time frames are compressed.").

But even if this temporal proximity is not by itself sufficient, Johnson has presented additional evidence from which an inference of causation can be drawn. The assistant manager told the police to remove Johnson from the premises because she "felt very harassed" and "uncomfortable . . . with him in the lobby." But the assistant manager admitted that she felt harassed and uncomfortable because Johnson "wouldn't stop" complaining about his perceived mistreatment even though she repeatedly apologized. Further, Johnson stated that when the police arrived at

the Hotel,[4] they explained that the assistant manager wanted him removed from the property because he "complained about a dirty room, dirty sheets, and . . . poor treatment." Viewing this evidence in the light most favorable to Johnson, a reasonable jury could find that the assistant manager called the police because of her desire to put an end to Johnson's complaints of discrimination.

The court nonetheless concludes that Johnson's "behavior" during his conversation with the assistant manager constituted "intervening unprotected conduct" that "negated an inference of a causal connection." Kiel, 169 F.3d at 1136. But one can arrive at the conclusion that Johnson was "agitated and aggressive" only by improperly drawing inferences in favor of the Hotel. The Hotel's cameras captured Johnson and the assistant manager both using hand movements during their interaction, even if Johnson's gestures were more animated. While the assistant manager testified that Johnson's body language became "aggressive," Johnson remained at a distance from her during the conversation, and he "never approached" the area behind the desk where she stood. And although the assistant manager testified that she felt intimidated by Johnson, the Hotel's cameras captured her moving out from behind the desk to face Johnson directly when she demanded that he leave the property.[5] In my view, the audio-less video does not portray a scene from which there is only one conclusion a viewer could reach about Johnson's "behavior." Based on the record before us, Johnson's conduct, and whether it could reasonably give cause for ejection from a place of public accommodation, is a factual matter that remains in dispute and is not for the court to decide at summary judgment.

---

[4]Johnson also recorded the encounter between him and the police at the Hotel.

[5]The court notes that Johnson raised his voice, but the evidence shows that the assistant manager "screamed" at Johnson. And while the court relies heavily on the assistant manager's testimony, the Hotel's video calls into question some of her descriptions of Johnson's movements, further highlighting the importance of a jury's role in resolving these factual disputes.

Moreover, Johnson's conduct was intertwined with, not subsequent to, his complaints to the assistant manager—his behavior was part and parcel of his expressive protected activity. And the Hotel has presented insufficient evidence to cast doubt on Johnson's showing of a retaliatory motive. Notably, the assistant manager testified that she had previously called the police to remove a guest on only three occasions, each involving a guest who had broken the law, damaged hotel property, or refused to pay for services. Johnson had done none of these things.

Because I would find that Johnson has established a causal connection between his protected activity and the challenged action that is sufficient for his prima facie case, I would reverse the district court's judgment as to Johnson's reprisal and retaliation claims.

_____