*489 OPINION OF THE COURT
Ciparick, J.
The New York City Human Rights Law, like the State Human Rights Law, protects certain groups from policies or practices that discriminate against them in areas such as employment, public accommodations and housing (see, Executive Law § 296; Administrative Code of City of NY § 8-107). The City’s Human Rights Law goes the additional step of prohibiting policies or practices which, though neutral on their face and neutral in intent, have an unjustified disparate impact upon one or more of the covered groups. In contrast to the State law, the New York City law explicitly extends protection to persons discriminated against on the basis of sexual orientation.
Plaintiffs Sara Levin and Maggie Jones are lesbians enrolled at defendant Yeshiva University’s Albert Einstein College of Medicine (AECOM) in the Bronx.[1] Plaintiff Gila Wildfire appears as an officer of AECOM’s lesbian and gay students’ organization. The complaint alleges the following facts, which we must accept as true for present purposes: Yeshiva maintains a number of different sized apartments near AECOM for the housing of medical students. AECOM’s housing policy restricts university-owned housing to medical students, their spouses and children. All apartment vacancies are filled from a waiting list on a first-come, first-served basis. Married couples, however, receive priority for studio apartments. One-bedroom apartments must be shared by a minimum of two students or a married couple. Two-bedroom apartments must be shared by a minimum of three individuals, with married couples having one or more children receiving priority.[2] To receive housing priority, married couples must provide Yeshiva’s housing office with acceptable proof of marriage.
Prior to her first year of medical school, plaintiff Sara Levin requested housing for herself and her partner of five years. Pursuant to its policy, AECOM informed her that she had to produce proof of marriage in order to live with a non-student. Unable to produce proof of marriage, Levin accepted housing *490 in an on-campus three-bedroom apartment with two other students. Levin’s request for housing with her partner was again denied the following year. Eventually, Levin and her partner moved into an off-campus apartment in Brooklyn. In her first year of medical school, plaintiff Maggie Jones was also denied housing with her partner. Jones accepted a one-bedroom apartment with another AECOM student during her first year, but then also relinquished campus housing to live with her partner off-campus.
Plaintiffs commenced this action in 1998 claiming that defendants’ housing policy discriminated against them based on marital status in violation of the New York State and City Human Rights Laws and that it had a disparate impact against lesbians and gay men in violation of the City Human Rights Law (Administrative Code § 8-107 [5], [17]). In lieu of answering, defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (7). Supreme Court granted defendants’ motion and dismissed the complaint in its entirety. The Appellate Division affirmed, agreeing that there was no discrimination or disparate impact on homosexuals, since defendant’s policy “had the same impact on non-married, heterosexual medical students as it had on non-married homosexual medical students” (272 AD2d 158). Because plaintiffs h,ave pleaded allegations sufficient to raise an issue of fact as to whether defendants’ housing policy has a disparate impact on the basis of sexual orientation under the New York City law, we now modify the order of the Appellate Division and remit this case to the Supreme Court for further proceedings.
Marital Status
Contrary to plaintiffs’ assertions, AECOM’s policy did not discriminate on the basis of marital status on its face. This question is settled by our prior holdings in Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (51 NY2d 506) and Hudson View Props. v Weiss (59 NY2d 733).
As we held in Matter of Pizza Hut, and then again in Hudson View, for purposes of applying the statutory proscription, a distinction must be made between the complainant’s marital status as such, and the existence of the complainant’s disqualifying relationship — or absence thereof — with another person. Just as the lease provision in Hudson View did not turn on the marital status of the tenant, but instead validly limited occupancy to only those in a legal, family relationship with the tenant, AECOM’s housing policy is restricted to those in legally *491 recognized, family relationships with a student, not the student’s marital status (see, Hudson View Props. v Weiss, supra, 59 NY2d, at 735).
In our view, AECOM’s housing policy — limiting cohabitational housing eligibility to students, their spouses and dependent children — is substantially indistinguishable from the policy considered in Hudson View limiting occupancy to tenants and their “immediate family.” For this reason, the policy does not facially discriminate on the basis of marital status and the causes of action alleging such discrimination, as prohibited by both the State and City Human Rights Laws, were properly dismissed.
Sexual Orientation
Section 8-107 (5) (a) (1) of the Administrative Code of the City of New York makes it an unlawful discriminatory practice to refuse housing accommodations to any person because of that person’s “actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, marital status, or alienage or citizenship status” (emphasis supplied). At the outset, we note that this provision applies to those who provide public or private housing accommodations, and so Yeshiva’s status as a private institution does not exempt it from the enactment. While denying its violation, Yeshiva concedes that it is subject to the City Human Rights Law. Plaintiffs, as members of a protected class, allege a violation of the New York City Human Rights Law, section 8-107 (17), which creates a cause of action for “an unlawful discriminatory practice based upon disparate impact.”
A claim of discrimination based on sexual orientation can be stated where a facially neutral policy or practice has a disparate impact on a protected group (Administrative Code § 8-107 [17] [a] [l]-[2]). Under that section, a claim is established where a plaintiff demonstrates that a defendant’s policy or practice “results in a disparate impact to the detriment of any group protected” under the City Human Rights Law (id.).[3] Our inquiry at this stage concerns whether the complaint sufficiently pleads that AECOM’s housing policy has such a *492 disparate impact on the basis of sexual orientation. How impact is measured is obviously a critical determination.
Instructive in this regard is Griggs v Duke Power Co. (401 US 424). In Griggs, plaintiffs, African-American employees of the defendant utility, alleged that their employer violated title VII of the Civil Rights Act of 1964 by instituting a policy that required all applicants for certain positions to have earned a high school diploma and/or pass a standardized test. Plaintiffs argued that the policy was discriminatory not because it targeted African-Americans but because, statistically, it disqualified African-Americans at a higher rate than white candidates. The lower courts held that defendant’s policy was not suspect because it was keyed solely to educational achievement, and there had been no showing of discriminatory intent.
The United States Supreme Court reversed, holding that under the Civil Rights Act, “practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to freeze the status quo of prior discriminatory employment practices” (Griggs, supra, 401 US, at 430). Looking beyond facial neutrality the Court stated “[the Civil Rights] Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation” (id. at 431). The Court concluded that the facially neutral hiring and promotional requirements operated to exclude African-Americans at a significantly higher rate than similarly situated white applicants. In such a context, a prima facie case of disparate impact is established when it is demonstrated that a test or policy “select [s] applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants” (Albemarle Paper Co. v Moody, 422 US 405, 425; see also, Dothard v Rawlinson, 433 US 321, 329-330 [comparing ratio of men to women nationally to ratio of men to women who had qualified for positions as corrections officers]).
Twenty years after Griggs, in 1991, the City of New York enacted Human Rights Law § 8-107 (17), explicitly creating a disparate impact cause of action for plaintiffs who can demonstrate “that a policy or practice of a covered entity [e.g., employer, housing provider] or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any [protected] group” (Administrative Code *493 § 8-107 [17] [a]). Unlike the State Human Rights Law, the City law both specifies a right of action for policies or practices that have a disparate impact and specifically prohibits any form of discrimination based on sexual orientation. The New York City Council also explicitly made “disparate impact” applicable to discrimination claims outside of the employment context (Administrative Code § 8-107 [17]).
Here, the Appellate Division held that, as a matter of law, AECOM’s housing policy did not have a disparate impact on plaintiffs on the basis of sexual orientation. It reached that conclusion by also ruling as a matter of law that married students had to be excluded from consideration for purposes of comparison between the benefitted and excluded classes. We conclude that the court erred in dismissing the complaint on that basis.
The exclusion of married students from the necessary comparison group conflicts with controlling disparate impact methodology and analysis. Self-evidently, married students make up a significant portion of the very class of persons made eligible by AECOM’s policy for the substantial economic and social benefits of cohabiting with non-students in university-owned housing. In no presently authoritative precedent, either Federal or from our Court, has a plaintiff in a disparate impact discrimination case been precluded from pointing to the composition of the class of persons rendered eligible for benefits under the challenged policy at issue. Excluding a large portion of the class benefitted by this policy from the disparate impact comparison group would render the disparate impact analysis articulated in Griggs (401 US 424, supra) meaningless. To illustrate, the result in Griggs would have been entirely different had the plaintiffs been prevented from analyzing the racial composition of those actually offered employment under the company’s hiring policy requiring successful test completion and/or a high school diploma. As a result, just as in the Appellate Division’s ruling here, the only comparison would have been between those African-Americans and white persons without high school diplomas or passing test scores. And, since 100% of both classes were not the recipients of favorable treatment, no disparate impact would have been established, thereby frustrating congressional policy as applied to that case.
Here, the Appellate Division declared that only unmarried AECOM students were the proper comparison group, citing Hudson View Props. v Weiss (59 NY2d 733) as its basis. In so doing, the court apparently adopted one of defendants’ two *494 principal justifications for excluding consideration of married students.
According to defendants, Hudson View established the legality of their housing policy, based upon the marital relationships of students and non-students, as against any discrimination challenge. On the basis of that assumption, defendants conclude that “married students are not similarly situated to other students because the distinction that the housing policy draws on the basis of marital relationship is a lawful one” (defendants’ brief, at 32 [emphasis in the original]). The fallacy of this premise is easily demonstrated.
Hudson View holds only that a landlord’s restriction limiting occupancy to a tenant’s immediate family does not violate prohibitions against facial discrimination based upon marital status. It does not, however, determine the question of whether the same policy would constitute prohibited disparate treatment or disparate impact discrimination based upon sexual orientation or, indeed, discrimination against any other statutorily protected class. Thus, if AECOM had limited cohabitational university housing to married students of a particular race and their non-student spouses, such a policy would arguably be “lawful” with respect to marital status discrimination under Hudson View, since it would be based upon the relationships and characteristics of the particular partners, not upon their marital status as such. No one would seriously contend, however, that such a policy would not constitute illegal discrimination based upon race. Likewise here, the legality of AECOM’s policy with respect to a marital status discrimination claim cannot insulate it from a sexual orientation discrimination claim.
Defendants’ alternative argument is likewise unavailing. They assert that, because State law limits marriage to a union between a man and a woman, marriage-based requirements, by their very terms, facially discriminate on the basis of sexual orientation. “[I]t is analytically false to characterize a ‘marriage-based requirement’ as being a ‘facially neutral policy’ vis-a-vis sexual orientation” (defendants’ brief, at 34). From that proposition, defendants draw the conclusion that married students must therefore be entirely excluded from the disparate impact analysis: “Because being married is not a facially neutral criterion as to Appellants’ claims of discrimination on the basis of sexual orientation, the courts below were correct in excluding married students from the composition of the similarly-situated groups to be compared” (id.).
*495 This reasoning is flawed in two critical respects. First, a university’s housing policy could not be facially discriminatory on the basis of sexual orientation if the criterion used to determine whether housing was awarded operated to exclude both heterosexual and homosexual students while, at the same time, conferred housing to a distinct group, also comprised of both homosexual and heterosexual students.
That is exactly the case here. As defendants have conceded, not only students with spouses, but also students with dependent children, regardless of sexual orientation, are entitled to housing priorities under AECOM’s policy. Conversely, not only gay and lesbian students and their partners are excluded from cohabitational housing, but also heterosexual students and their partners who, for whatever reason, are unable or unwilling to marry, as well as heterosexual and homosexual students who wish to live with relatives not qualifying as dependent children. Second, even if we were to accept defendants’ proposition that AECOM’s housing policy lacks facial neutrality “vis a vis sexual orientation,” then AECOM would be compelled to acknowledge that its policy was facially discriminatory and, thus, in direct violation of the City’s Human Rights Law on the basis of disparate treatment, without the necessity of establishing disparate impact.
Defendants’ position here essentially distills to the proposition that AECOM’s policy must be viewed as distinguishing between two nonsimilarly-situated groups: married students on the one hand who, by law, do not include homosexuals, and non-married students on the other. In short, AECOM’s premise is that the comparison groups must be separated along the facially neutral lines drawn by its policy. The flaw in this analysis is demonstrated in the congressional repudiation of both the result and the reasoning of the Supreme Court’s decision in General Elec. Co. v Gilbert (429 US 125) (see, Newport News Shipbuilding & Dry Dock Co. v Equal Empl. Opportunity Commn., 462 US 669).
At issue in General Elec. v Gilbert was a company employee disability plan that gave its workers benefits during periods of disability due to all nonoccupational causes except pregnancy. The majority in Gilbert held that the plaintiffs failed to establish a Civil Rights Act title VII violation for discrimination based upon gender, employing a rationale almost indistinguishable from that advanced here by defendants. That is, that the disability plan created two separate and dissimilar groups: (1) pregnant women (based on their physical condition, not *496 gender); and (2) nonpregnant men and women, who were treated equally for benefit eligibility (see, Gilbert, 429 US, at 134-135). The dissenters in Gilbert rejected that analysis as “simplistic and misleading” (id., at 152). The relevant comparison, according to the dissenters, had to be the overall disability coverage afforded men as against that afforded women (see, 429 US, at 155, 160 [Brennan, J., dissenting]; id., at 161 [Stevens, J., dissenting]). Under that analytical framework, the General Electric plan — which insured employees, male and female, against all risks of disability except pregnancy, the single risk that is unique to women — was discriminatory based upon gender under the proper disparate impact analysis.
As fully explained in Newport News Shipbuilding & Drydock Co., in 1978, Congress overruled and repudiated the reasoning of Gilbert, and the legislative history expressly adopted the views of the dissenters in that case (see, Newport News, supra, 462 US, at 678-679). Just as in Gilbert, the attempt here is to extract married medical students — the very group benefitted by AECOM’s housing policy — from consideration in any disparate impact analysis thereby obscuring any realistic examination of the discriminatory effects of that policy.
In order to determine whether AECOM’s housing policy has a disparate impact that falls along the impermissible lines of sexual orientation, there must be a comparison that includes consideration of the full composition of the class actually benefitted under the challenged policy. Because the Appellate Division’s exclusion of at least a significant portion of that benefitted group constituted error as a matter of law, the cause of action alleging disparate impact discrimination based on sexual orientation as proscribed by the New York City Human Rights Law § 8-107 (17) was improperly dismissed on the pleadings and must be reinstated and remitted to Supreme Court for further proceedings. If, upon remittal, plaintiffs establish that AECOM’s policy regarding university-owned housing with non-students disproportionately burdens lesbians and gay men, the City Administrative Code requires that defendants justify their policy as bearing a “significant relationship to a significant business objective” (Administrative Code § 8-107 [17] [a] [2]). The claims of plaintiff Wildfire, who lacked standing, were properly dismissed.
Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the seventh cause of action of plaintiffs Levin and Jones and, as so modified, affirmed.

. All parties agree that Yeshiva’s religious affiliations have no bearing on this appeal. Also, plaintiffs did not plead claims based on either the State or Federal Constitution.

. The complaint alleges, at paragraph (9), that university-owned housing is restricted to ‘Yeshiva students, their spouses and children.” Presumably, a single parent, regardless of sexual orientation, would be eligible to reside in university-owned housing with his or her child. The complaint is silent on this subject. However, defendants appear to concede the point in their brief.

. Once that showing has been made, defendant has an opportunity to plead and prove as an affirmative defense that the policy or practice complained of “bears a significant relationship to a significant business objective.” The defense is defeated, however, when plaintiff produces substantial evidence of an available alternative policy or practice with less disparate impact, and defendant fails to prove that the alternative policy or practice *492 would not serve defendant’s significant business objective as well as the complained-of policy or practice (Administrative Code § 8-107 [17] [a] [2]).