Amy MONSON, et al., Appellants,

v.

ROCHESTER ATHLETIC CLUB,
et al., Respondents.

No. A07–2433.

Court of Appeals of Minnesota.

Jan. 6, 2009.

Joni M. Thome, Halunen & Associates, and Philip A. Duran, Minneapolis, MN, for appellants.

Gregory J. Griffiths, Christopher D. Nelson, Dunlap & Seeger, P.A., Rochester, MN, for respondents.

Teresa J. Nelson, American Civil Liberties Union of Minnesota, St. Paul, MN; and Leslie Cooper (pro hac vice), American Civil Liberties Union, New York City, for amici curiae.

Considered and decided by KALITOWSKI, Presiding Judge; PETERSON, Judge; and HALBROOKS, Judge.

## OPINION

PETERSON, Judge.

In this appeal from summary judgment, appellants challenge the district court's dismissal of their claims against respondents for discrimination on the basis of sexual orientation in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. §§ 363A.01–.41 (2008). Because the district court did not err in determining that (1) there were no genuine issues of material fact and that judgment was appropriate as a matter of law under a disparate-treatment theory of proof; and (2) a disparate-impact theory of proof is not available for claims arising under the public-accommodations provision of the MHRA, Minn.Stat. § 363A.11, we affirm.

## FACTS

Appellants Amy and Sarah Monson (the Monsons), a same-sex couple who are co-habiting and raising a child together, sought to become members of respondent Rochester Athletic Club (RAC) at the family membership rate. RAC denied the Monsons' request, citing its policy to provide family rates only to married couples. The Monsons brought suit, alleging claims against RAC for discrimination on the basis of sexual orientation in violation of the MHRA, and against respondent John D. Remick, president and CEO of RAC, for aiding and abetting the violations.

Remick and RAC moved for summary judgment, asserting that appellants could not meet their prima facie burden under a disparate-treatment theory because they could not show differential treatment on the basis of sexual orientation. When appellants clarified that their claims were also asserted under a disparate-impact theory, respondents argued that the disparate-impact theory is not available under the MHRA for claims arising outside the context of employment discrimination. The district court agreed with respondents on both grounds and granted the motion for summary judgment.[1]

The Monsons appeal.

## ISSUES

I. Are there genuine issues of material fact regarding appellants' claim under a disparate-treatment theory of proof, and was judgment on that claim appropriate as a matter of law?

II. Is a disparate-impact theory of proof available for claims arising under the public-accommodations provision of the Minnesota Human Rights Act, Minn.Stat. § 363A.11?

## ANALYSIS

"On appeal from summary judgment, we review de novo whether there are any

---

1. The district court dismissed the claim against Remick because it was dependent on a finding of liability against RAC.

genuine issues of material fact and whether the district court erred in its application of the law." *Razink v. Krutzig,* 746 N.W.2d 644, 649 (Minn.App.2008). We view the evidence in the light most favorable to the party against whom the district court granted summary judgment. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn. 1993). "When a motion for summary judgment is made and supported, the nonmoving party must 'present specific facts showing that there is a genuine issue for trial.'" *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quoting Minn. R. Civ. P. 56.05). Mere averments are not sufficient to survive summary judgment. *Id.* at 71. "When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, reviewed de novo." *Gomez v. David A. Williams Realty & Constr., Inc.,* 740 N.W.2d 775, 779 (Minn.App.2007).

■■■ The Monsons allege discrimination claims under the theories of disparate treatment and disparate impact. The United States Supreme Court has explained the distinction between disparate-treatment claims and disparate-impact claims in the employment context as follows:

"Disparate treatment" ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. ...

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required under a disparate-impact theory.

*Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 (1977) (citation omitted).

## I.

■■■ The Monsons first challenge the dismissal of their claims brought under a disparate-treatment theory. To analyze disparate-treatment claims at the summary-judgment stage of proceedings, Minnesota courts use the *McDonnell Douglas* framework, which consists of "a prima facie case, an answer, and a rebuttal." *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 441–42 (Minn.1983) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In the public-accommodations context, the elements of a prima facie case are: (1) the plaintiffs are members of a protected class; (2) the defendant discriminated against plaintiffs regarding the availability of its facility; and (3) the discrimination was because of plaintiffs' membership in the protected class. *Potter v. LaSalle Sports & Health Club,* 368 N.W.2d 413, 416 (Minn.App.1985).

■■■ The district court concluded that the Monsons could not establish a prima facie case because they could not show differential treatment based on sexual orientation. The Monsons challenge the district court's conclusion that "[f]or all practical purposes, heterosexual cohabiting couples are treated no differently than same-sex cohabiting couples." To support their assertion that material facts exist regarding this issue, the Monsons cite RAC's counsel's concession during oral argument that unmarried heterosexual cou-

ples could possibly obtain family memberships by lying about their marital status. These concessions do not demonstrate a genuine issue of material fact precluding summary judgment.[2]

The record submitted by the Monsons in opposition to summary judgment includes two affidavits from a homosexual couple that was first granted but then denied a family membership at the RAC. But the Monsons offered no evidence of any unmarried heterosexual couple that had been allowed to join RAC at the family membership rate. Although RAC admittedly did not require proof of marital status, there is no evidence in the record that RAC intentionally, or even knowingly, allowed unmarried heterosexual couples to obtain family memberships. Thus, the district court did not err in determining that the Monsons did not meet their burden of establishing a prima facie case under a disparate-treatment theory.

The Monsons and amicus curiae American Civil Liberties Union of Minnesota urge that the district court's analysis was legally flawed because it compared the Monsons to unmarried heterosexual couples, rather than to all heterosexual couples—married or unmarried. They assert that RAC's policy is facially discriminatory because, by virtue of the state's marriage laws, only heterosexuals can qualify for family memberships, and they cite opinions from other states' courts supporting this view. *See Alaska Civil Liberties Union v. State*, 122 P.3d 781 (Alaska 2005); *Bedford v. N.H. Cmty. Technical Coll.*

*Sys.*, Nos. 04–E–229, 04–E–230, 2006 WL 1217283 (N.H.Super.2006).

 We are not persuaded by the Monsons' argument or by the opinions that they cite. The flaw in the argument is that in asserting that RAC's policy is facially discriminatory, the Monsons do not rely only on the terms of the policy; they also rely on the marriage statute, which states: "Marriage, so far as its validity in law is concerned, is a civil contract between a man and a woman. . . ." Minn. Stat. § 517.01 (2008). By itself, RAC's policy does not discriminate on the basis of sexual orientation; it denies family memberships to unmarried heterosexual couples and unmarried homosexual couples alike. The policy is facially neutral, and it is only when the policy combines with the marriage statute that a disparate impact occurs. Consequently, the district court's analysis of the Monsons' disparate-treatment claim was not legally flawed.

This conclusion is consistent with opinions from other states that reject the argument that drawing distinctions based on marital status facially discriminates on the basis of sexual orientation. *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099, 1104–06 (2001) (holding that policy based on marital status did not facially discriminate on the basis of sexual orientation and analyzing claim under disparate-impact theory); *Tanner v. Or. Health Sciences Univ.*, 157 Or.App. 502, 971 P.2d 435, 443–44 (1998) (concluding that denial of health benefits to domestic partners did not facially dis-

---

2. Respondents argue that statements of counsel could not properly be considered by the district court in ruling on their summary-judgment motion. There is a difference however, between considering arguments by counsel as evidence and considering concessions by counsel that certain evidence does or does not exist. *Compare* Minn. R. Civ. P. 56.03 (requiring summary judgment to be

based on admissible evidence), *with Lundgren v. Eustermann*, 370 N.W.2d 877, 881 n. 1 (Minn.1985) (providing that, "in addition to the pleadings, affidavits and depositions, the [district] court in deciding a motion may consider oral testimony, facts subject to judicial notice, stipulations, concessions of counsel, and any other material that would be admissible in evidence or otherwise usable at trial").

criminate on the basis of sexual orientation and analyzing claim under disparate-impact theory); *Phillips v. Wis. Personnel Comm'n,* 167 Wis.2d 205, 482 N.W.2d 121, 123 (Ct.App.1992) (holding that denial of family health benefits to unmarried partners applies "equally to hetero- and homosexual employees and thus does not discriminate against the latter group" because denial "is keyed to marriage and ... does not illegally discriminate by doing so"); *Hinman v. Dep't of Personnel Admin.,* 167 Cal.App.3d 516, 526, 213 Cal. Rptr. 410 (1985) (explaining that health policy "makes a distinction solely on the basis of married and unmarried employees or annuitants, not between heterosexual and homosexual ones").

## II.

■ Appellants next challenge the district court's conclusion that under the MHRA, the disparate-impact theory is not applicable to claims of discrimination in public accommodations. The disparate-impact theory was first conceived by federal courts construing Title VII to address facially neutral employment policies that perpetuated the effects of past discrimination. *See, e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (seminal Title VII disparate-impact case). The Minnesota Supreme Court followed suit, recognizing a disparate-impact theory for employment-discrimination claims under the MHRA. *See Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express*

*& Station Employees, Lodge 364 v. State by Balfour,* 303 Minn. 178, 188–90, 229 N.W.2d 3, 9–10 (1975). But neither the supreme court nor this court has ever addressed the availability of the disparate-impact theory for claims arising under the public-accommodations provision of the MHRA.[3]

■ Our determination whether a claim under Minn.Stat. § 363A.11 may be proved using a disparate-impact theory begins with the language of the statute itself. Minn.Stat. § 645.16 (2008). In interpreting the MHRA, our goal is to "ascertain and effectuate the intention of the legislature." *Id.* The MHRA is to be liberally construed to accomplish its purposes, which include providing freedom from discrimination in public accommodations on the basis of sexual orientation. Minn.Stat. §§ 363A.02, subd. 1(a)(3), .04. But a liberal construction cannot enlarge the MHRA beyond its clear and definite scope. *See, Beck v. Groe,* 245 Minn. 28, 44, 70 N.W.2d 886, 897 (1955) (holding that "remedial nature" of statute does not justify adoption of a "meaning not intended by the legislature").

■ Our interpretation of the MHRA is informed by interpretations of similar provisions in the federal anti-discrimination statutes. *Wenigar v. Johnson,* 712 N.W.2d 190, 205 (Minn.App.2006). We find important guidance in federal court decisions regarding the availability of the disparate-impact theory of proof under

**3.** The Monsons cite two decisions from this court addressing the sufficiency of allegations and/or evidence to support disparate-impact claims brought under the public-accommodations provision of a Minneapolis ordinance and a provision of the MHRA that addressed discrimination in access to public services. *See Paper v. Rent–A–Wreck,* 463 N.W.2d 298, 300 (Minn.App.1990) (reversing decision of Minneapolis Commission on Civil Rights holding relator liable for public-accommoda-

tions discrimination in violation of Minneapolis ordinance under disparate-impact theory), *review denied* (Minn. Jan. 14, 1991); *Khalifa v. State,* 397 N.W.2d 383, 388 (Minn. App.1986) (holding that appellant stated MHRA claim for discrimination in access to public services under disparate-impact theory). Neither of these cases arose under Minn. Stat. § 363A.11. Moreover, the opinions do not indicate that the viability of the disparate-impact theory was at issue in these cases.

various federal statutes. Most recently, in *Smith v. City of Jackson, Miss.* the United States Supreme Court held that claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 623–634 (2000) (ADEA), may be proved using a disparate-impact theory. 544 U.S. 228, 240, 125 S.Ct. 1536, 1544, 161 L.Ed.2d 410 (2005). In so holding, the Court explained that the language of the ADEA does not "simply prohibit [ ] actions that limit, segregate, or classify persons; rather, the language prohibits such actions that deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." *Id.* at 235, 125 S.Ct. at 1542 (quotation and emphasis omitted); *see also* 29 U.S.C. § 623(a)(2). Thus, the Court concluded, "the text focuses on the *effects* of the action on the employee rather than the motivation for the action of the employer." *Id.*; *see also Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 989–91, 108 S.Ct. 2777, 2786–87, 101 L.Ed.2d 827 (1988) (relying on identical statutory language in Title VII, 42 U.S.C. § 2000e–2(a)(2) (2000), to hold viable claim based on subjective or discretionary employment practices causing a disparate impact).

The Supreme Court has not addressed the availability of the disparate-impact theory for claims arising under Title II of the Civil Rights Act of 1964, which provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, col-or, religion, or national origin." 42 U.S.C. § 2000a(a) (2000). However, the lower federal courts that have conducted a textual analysis of Title II have concluded that disparate-impact claims are not cognizable under that statute. *See Akiyama v. U.S. Judo Inc.,* 181 F.Supp.2d 1179, 1185 (W.D.Wash.2002) (reasoning that prohibitions against segregation and deprivation of services are "more consistent with an intent to prevent disparate treatment than to prevent unintended adverse effects"); *LaRoche v. Denny's, Inc.,* 62 F.Supp.2d 1366, 1371 n. 2 (S.D.Fla.1999) (explaining that "the clear language of Title II itself speaks in terms of disparate treatment").[4]

Like the various federal anti-discrimination statutes, different sections of the MHRA use different language to define prohibited conduct. The employment-discrimination provisions of the MHRA make it

> an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, sexual orientation, or age to ... refuse to hire *or to maintain a system of employment which unreasonably excludes* a person seeking employment[.]

Minn.Stat. § 363A.08, subd. 2(1) (emphasis added). Thus, both an employer who refuses to hire based on one of the enumerated classifications and an employer who does not refuse to hire based on one of the

---

**4.** Some federal courts have addressed the sufficiency of evidence to support disparate-impact claims under Title II without expressly deciding whether such a theory is available to Title II claimants. *See, e.g., Arguello v. Conoco, Inc.,* 207 F.3d 803, 813 (5th Cir.2000) ("assuming arguendo that disparate impact claims are cognizable under Title II" but holding that plaintiff did not establish a prima facie case); *Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333, 1340–41 (2d Cir.1974) (suggesting that disparate-impact theory might apply to swim club's policy limiting guest privileges to relatives or friends of members). Because the opinions in these cases do not include a textual analysis of Title II, we do not find them helpful to our analysis here.

enumerated classifications but who maintains a system of employment that unreasonably excludes persons from employment according to one of the classifications have committed an unfair employment practice.

But the public-accommodations provision of the MHRA does not include such effects-based language and, instead, provides only that "[i]t is an unfair discriminatory practice ... to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex." Minn.Stat. § 363A.11, subd. 1(a)(1). The text of this section focuses solely on the public-accommodation provider's conduct in denying the full and fair enjoyment of the accommodation and does not address the effects of the provider's conduct caused by other factors. Accordingly, we conclude that the disparate-impact theory is not available for claims arising under this section.

Because we determine that the text of section 363A.11 does not permit a disparate-impact theory of proof, we need not reach the parties' arguments about the effect of a 1990 legislative amendment identifying the elements and burdens of proof for a disparate-impact claim in the employment context. *See* 1990 Minn. Laws ch. 567, § 6, *codified at* Minn.Stat. § 363A.28, subd. 10. Nor do we express an opinion as to the applicability of a disparate-impact theory under other sections of the MHRA outside the public-accommodations context.

## DECISION

Because the Monsons did not raise a genuine issue of material fact under a disparate-treatment theory of discrimination and because their claim for public-accommodations discrimination under Minn.Stat. § 363A.11 cannot proceed under a disparate-impact theory, summary judgment was properly entered.

**Affirmed.**