OPINION OF THE COURT
Arlene P. Bluth, J.
The motion to dismiss by defendants is denied and the cross motion to amend the complaint is granted.
Background
This case requires this court to define the reach of marital status discrimination claims under New York City’s Human Rights Law (NYCHRL). More specifically, this motion requires the court to explore the limits of employer conduct towards an employee solely because of his perceived marriage.
Plaintiff began working for defendant Fidessa Corporation, a financial services firm, around June 2001. Plaintiff continued his employment with Fidessa, except for a break between August 2006 and May 2007, until his termination on July 28, 2016.
Plaintiff claims that he was fired due to his perceived relationship with Lael Wakefield. Plaintiff began this relationship with Wakefield in December 2004 and eventually married Wakefield in November 2006. Plaintiff later divorced Wakefield in September 2011, but continued to reside with her and their children. Plaintiff claims that Fidessa thought he and Wake-field were married at the time plaintiff was terminated.
Wakefield was also employed by Fidessa. She worked at Fi-dessa from about January 2000 until May 2016, when she left Fidessa and began to work for another financial services firm. Plaintiff claims that right after Wakefield left, he was suspended (on June 25, 2016) and later fired in July 2016.
Plaintiff alleges that defendant Mark Ames told plaintiff that he was terminated due to plaintiff’s marriage to Wake-field and that plaintiff would be considered for future employment if he ended his marriage to Wakefield. Plaintiff contends that his termination was not based on his performance at work, any misconduct, or because of any specific action he took while working for Fidessa. Plaintiff argues that he was fired because he was married (or perceived to be married or in a partnership) to Wakefield.
Defendants move to dismiss on the ground that a claim for marital status discrimination does not encompass the identity *655 of the person to whom someone is married. It only prohibits discrimination based on whether someone is married, single, divorced, etc.
Discussion
“On a CPLR 3211 motion to dismiss, the court will accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Nonnon v City of New York, 9 NY3d 825, 827 [2007] [internal quotation marks and citation omitted]).
The NYCHRL provides that
“[i]t shall be an unlawful discriminatory practice:
“(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person . . .
“(2) To refuse to hire or employ or to bar or to discharge from employment such person; or
“(3) To discriminate against such person in compensation or in terms, conditions or privileges of employment” (Administrative Code of City of NY § 8-107 [1] [emphasis added]).
The New York Court of Appeals has held that marital status is
“the social condition enjoyed by an individual by reason of his or her having participated or failed to participate in a marriage. Illuminated another way, when one is queried about one’s ‘marital status’, the usual and complete answer would be expected to be a choice among ‘married’, single, etc., but would not be expected to include an identification of one’s present or former spouse and certainly not the spouse’s occupation” (Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd., 51 NY2d 506, 511-512 [1980]).
Clearly, plaintiff would not have a cause of action for marital status discrimination under the State Human Rights Law (id.; see also Levin v Yeshiva Univ., 96 NY2d 484 [2001] [holding that a medical school’s rule limiting the permitted residents in its university-provided housing to students, spouses and children did not constitute marital status discrimination when two *656 lesbians, who had been partners for five years, were denied housing together]). However, this interpretation is not disposi-tive because it required the Court to interpret the State Human Rights Law rather than the NYCHRL. Further, the NYCHRL was amended via the Local Civil Rights Restoration Act of 2005 (Local Law No. 85 [2005] of City of NY [Restoration Act]) after both the Manhattan Pizza Hut and Levin cases were decided.
“While the Restoration Act amended the City HRL in a variety of respects, the core of the measure was its revision of Administrative Code § 8-130, the construction provision of the City HRL:
“ ‘The provisions of this [chapter] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.’ (Local Law 85 § 7 [deleted language in brackets, new language emphasized].)” (Williams v New York City Hous. Auth., 61 AD3d 62, 66 [1st Dept 2009].)
State statutes are only to be viewed as a floor below which the NYCHRL cannot fall (id.). The purpose of the Restoration Act was to ensure that the NYCHRL is interpreted as “broadly” and “independently” as possible (see id. at 67).
The First Department in Williams cited to a statement by Council Member Annabel Palma, when the NYCHRL was amended in 2005, in which she criticized cases like Levin because they failed to interpret the NYCHRL as broadly as the law intended (statement of Annabel Palma at meeting of NY City Council [Sept. 15, 2005, tr at 41]).
The parties do not cite a controlling case interpreting the meaning of marital status under the NYCHRL after 2005 and, therefore, this case appears to be one of first impression. The court must decide whether to interpret the term marital status narrowly and dismiss this action or whether plaintiff has alleged a cognizable claim for marital status discrimination because defendants suggested that he would be rehired if he divorced Wakefield.
At least one state has broadened the interpretation of marital status discrimination to include the identity of someone’s spouse (see Taylor v LSI Corp. of Am., 796 NW2d 153 [Minn *657 2011] [finding that the definition of marital status under Minnesota’s Human Rights Act applies in the employment context and includes the identity or actions of a spouse or former spouse]). The New York City Council, when amending the NYCHRL in 2005, appears to have directed courts to implement an interpretation of marital status beyond the fact of whether someone is married or not (see Craig Gurian, A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law, 33 Fordham Urb LJ 255, 293-296 [2006] [noting, in the context of the Restoration Act, that courts had previously failed to interpret marital status under the NYCHRL to fulfill its broad purposes]).
In many ways, the identity or occupation of someone’s spouse is a necessary corollary to the definition of marital status. A litigant can only suffer adverse consequences based on the actions of a spouse if he or she has a spouse. Needless to say, a single person will not be fired for the actions of a nonexistent spouse. The purpose of laws prohibiting marital status discrimination is not based only upon whether someone is married or single; it is to alleviate the challenges, and eliminate the stereotypes, that accompany that status. For example, the first wave of marital status discrimination laws addressed issues affecting single women’s ability to obtain financial independence (Courtney G. Joslin, Marital Status Discrimination 2.0, 95 BU L Rev 805, 811-812 [2015]). These laws sought to ensure that women were afforded opportunities to achieve financial success even if they happened to be single. Marital status discrimination laws were designed to mollify a problem— disparate treatment arising out of one’s decision to be married or single.
Further, interpreting marital status so narrowly, as defendants assert, can lead to unintended and arbitrary consequences. In Thompson v Board of Trustees, Sch. Dist. No. 12, Harlem Blaine County (192 Mont 266, 268, 627 P2d 1229, 1230 [1981]), the Montana Supreme Court interpreted the definition of marital status broadly when a school board adopted a policy, effective in 1980, that school administrators could not have a spouse employed in any capacity in the same school district and fired a longtime elementary school principal whose spouse worked in the school district. The Thompson court noted that “a narrow interpretation of the term ‘marital status’ is unreasonable, and could lead to an absurd result. In this case, if plaintiff and his wife were simply to dissolve their marriage, both could *658 keep their jobs” (192 Mont at 270, 627 P2d at 1231). The court concluded that the term marital status “includes the identity and occupation of one’s spouse” (id.).
Here, plaintiff alleges that he was told he was fired because of his perceived marriage to Wakefield and that he would be considered for future employment if he ended his marriage with Wakefield (complaint ff 42, 43; proposed amended complaint ¶¶ 45, 46). This is analogous to the Thompson case described above; assuming plaintiff’s allegations are true, plaintiff would have his job if he were single (or simply not married to Wakefield). Therefore, the court finds that plaintiff has stated a cognizable cause of action. Plaintiff’s allegations demonstrate that he was treated differently because defendants thought he was married to Wakefield.
An employer should not have an unlimited ability to infringe on a person’s liberty interest in his or her adult relationships (see Joslin, supra at 815). Plaintiff alleges that defendants sought to control the composition of his family life by informing him that he was fired because he was married and that he might be rehired if he divorced Wakefield—to allow that conduct would permit an employer to assert substantial control over an employee’s private life. Defendants could, for instance, demand that an employee marry his or her partner and then fire that employee if he or she refused. That decision, whether to get married (or stay married), has nothing to do with the employee’s performance, financial constraints, or other permissible reasons that might prompt termination.
Here, the complaint alleges that Wakefield went to a competitor after 16 years at Fidessa. If defendants were upset with Wakefield and took out their frustration on plaintiff,* then that is exactly the type of conduct the NYCHRL was intended to prevent. Plaintiff should not be forced to choose between his marriage (although here plaintiff was already divorced) or his employment.
OATH Decision
Defendants attach a decision by the Office of Administrative Trials and Hearings in which an Administrative Law Judge found that the identity of a spouse is not encompassed in the *659 definition of marital status (Commission on Human Rights ex rel. Cerullo v Fricione, NY City Off of Admin Trials & Hearings, index Nos. 1865/10, 1866/10 [June 2, 2010]; affirmation in support, exhibit B). Administrative Law Judge Lewis’s conclusion that the 2005 amendments to the NYCHRL (the Restoration Act) specifically declined to expand the definition of marital status discrimination because the City Council omitted language, present in the initial draft of the Restoration Act in 2004, which included the status of a person “in relation to another person” and “the marital status of a person in isolation” {Fricione, slip op at 6). Judge Lewis ascribes great significance to the fact that this language was removed from the final version of the law. However, as Judge Lewis acknowledges, the focus of the City Council appears to have been on addressing the result in Levin and she claims that “employment decisions based on an employee’s relationship with another employee were beyond the Council’s contemplation” {id. at 7). Judge Lewis then observes that employer anti-nepotism polices were not discussed and, therefore, because the City Council could not have intended to overturn longstanding rules regarding anti-nepotism, the City Council did not expand the definition of marital status discrimination (id. at 7-8).
This thoughtful decision, however, is not controlling on this court and Judge Lewis failed to address the City Council’s clear directive to expand the interpretation of the NYCHRL beyond existing state laws. The fact that the City Council did not specifically address situations such as the one before Judge Lewis, or present in the instant action, does not mean that the City Council embraced a narrow definition of marital status. The deletion of language in the draft appears to have been resolved with the inclusion of “partnership status” in the NYCHRL as another basis of a discrimination claim—that language is consistent with the legislative history directed at dissatisfaction with the result in Levin. But it is far too attenuated to state that the City Council embraced the decision in Manhattan Pizza Hut. The purpose of the Restoration Act of 2005 was to signify the City Council’s unhappiness with courts narrowly interpreting the NYCHRL—this court must heed that directive.
Cross Motion to Amend
“Leave to amend pleadings is to be freely given absent prejudice or surprise directly resulting from the delay” (Cseh v New York City Tr. Auth., 240 AD2d 270, 271 [1st Dept 1997], citing *660 CPLR 3025 [b]). “Prejudice arises when a party incurs a change in position or is hindered in the preparation of its case or has been prevented from taking some measure in support of its position, and these problems might have been avoided had the original pleading contained the proposed amendment” (Valdes v Marbrose Realty, 289 AD2d 28, 29 [1st Dept 2001]).
“On a motion for leave to amend, plaintiff need not establish the merit of its proposed new allegations, but simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit” (MBIA Ins. Corp. v Greystone & Co., Inc., 74 AD3d 499, 500 [1st Dept 2010] [citations omitted]).
Plaintiffs cross motion to amend is granted. Plaintiff has a valid cause of action for marital or partnership status discrimination and the proposed amended complaint merely provides more details about plaintiff’s termination and discusses another romantic relationship (between two unmarried employees) where no adverse action was taken despite the fact that one of the employees also left for a competitor.
Summary
In finding a cause of action, the court is merely recognizing that an employer may not use adverse employment actions solely to control an employee’s marital relationship. Assuming plaintiff’s allegations are true, as this court must at this procedural posture, defendants sought to induce plaintiff to divorce his wife by claiming that plaintiff might be rehired if he ended his marriage. If plaintiff were single, he would not have faced this decision. The purpose of employment discrimination laws is to prevent this type of conduct—leveraging an employee’s job against his or her marriage.
To be clear, this court’s narrow ruling is simply that an employer cannot terminate an employee solely because that employee does not heed an employer’s directive to divorce his or her spouse. The court takes no position on the constitutionality of anti-nepotism laws. There may be good business reasons for having such rules—such as preventing favoritism in the workplace—but the validity of such a rule is not before this court. The court is also not embracing an expansive or broad view of marital status discrimination or defining the limits of a marital discrimination claim. This court only finds that a cognizable claim for marital status discrimination exists where it is alleged that an employer sought to control an employee’s marital relationship based on his or her perceived marriage.
*661 Accordingly, it is hereby ordered that defendants’ motion to dismiss is denied and plaintiff’s cross motion to amend the complaint is granted.

 The court observes that although defendants did not offer a nondiscriminatory reason for firing plaintiff, defendants were not required to do so on a motion to dismiss for failure to state a cause of action. Discovery may of course reveal that plaintiff’s termination was justified. But, on a motion to dismiss, the court must take all of plaintiff’s allegations as true.