23-7348-cv
*Fair Hous. Just. Ctr., Inc., v. Pelican Mgmt., Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of January, two thousand twenty-five.

PRESENT:
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

———————————————————————

FAIR HOUSING JUSTICE CENTER, INC.,

> *Plaintiff-Appellee*,

ALFRED SPOONER,

> *Plaintiff*,

> v. 23-7348-cv

PELICAN MANAGEMENT, INC., FORDHAM ONE
COMPANY, LLC., CEDAR TWO, LLC.,

> *Defendants-Counter-Claimants-Appellants*,

GOLDFARB PROPERTIES, DEEGAN TWO COMPANY,

> *Defendants*.

———————————————————————

FOR PLAINTIFF-APPELLEE: DIANE L. HOUK (Sonya Levitova, *on the brief*), Emery Celli Brinckerhoff Abady Ward & Maazel, LLP, New York, New York.

FOR DEFENDANTS-COUNTER
-CLAIMANTS-APPELLANTS: DAVID RABINOWITZ (Robert S. Wolf, *on the brief*), Moses & Singer, LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on September 29, 2023, is **AFFIRMED**.

Defendants-Counter-Claimants-Appellants Pelican Management, Inc. ("Pelican Management"), Fordham One Company, LLC, and Cedar Two, LLC (collectively, "Goldfarb")[1] appeal from the district court's judgment granting injunctive and monetary relief to Plaintiff-Appellee Fair Housing Justice Center, Inc. ("FHJC"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**BACKGROUND**

Goldfarb is a large New York managing agent, which oversees approximately 6,000 rental units in New York City and its surrounding suburbs. FHJC filed the instant lawsuit in February 2018, alleging that Goldfarb's rental practices constituted housing discrimination based on

---

[1] Pelican Management is a managing agent of rental properties and operates under the business name Goldfarb Properties. Fordham One and Cedar Two are the ownership entities of two rental buildings managed by Goldfarb Properties at which plaintiff Alfred Spooner attempted to rent an apartment, but was denied based on his income level.

2

disability and source of income, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(1), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8107(5)(a). Specifically, FHJC asserted that in 2015 Goldfarb adopted a minimum income policy for prospective renters, requiring, among other things, that all prospective renters earn a gross annual income of at least 43 times their total monthly rent (the "2015 Policy"). FHJC claimed that the 2015 Policy excluded virtually all renters who received certain rental subsidies, a large percentage of whom have disabilities, and thereby disparately impacted those renters on the basis of disability and source of income, in violation of the FHA and NYCHRL.

In 2019, while discovery in the case was ongoing, Goldfarb implemented a new policy that included three components (the "2019 Policy"). First, with respect to applicants with no rental subsidy, the criteria under the 2019 Policy that prospective renters earn an annual income of at least 43 times their total monthly rent remained the same as before. Second, as to applicants with a full subsidy (*i.e.*, 100 percent of the rent is paid by a government program), the 2019 Policy eliminated all income-related requirements. Finally, with respect to applicants with a partial subsidy (*i.e.*, a portion, but not all, of the rent is paid by a government program), the 2019 Policy, among other things, required that prospective renters earn 40 times their share of the monthly rent, rather than 43 times the full rent. Under the 2019 Policy, Goldfarb denied applications for the following three reasons: (1) "voucher insufficient" (when it was determined that an available apartment's rent was outside the amount that the applicant's subsidy allowed); (2) "no contact" (when Goldfarb could not reach an applicant to have further communications); and (3) "not

3

qualified."[2]   After implementing the 2019 Policy, Goldfarb filed a counterclaim seeking a declaratory judgment that the new policy is lawful.

The district court conducted a bench trial, during which both sides offered expert testimony. FHJC's expert, Dr. Justin Steil, found that, under the 2019 Policy, only 13% of partially subsidized applicants were approved compared to 30% of unsubsidized applicants. By contrast, Goldfarb's expert, Dr. Paul White, found that 47% of subsidized applicants were approved compared to 34% of unsubsidized applicants. In conducting his analysis, Dr. Steil included denials that were categorized as "voucher insufficient" and "no contact," while Dr. White excluded those categories. Moreover, unlike Dr. Steil, Dr. White did not distinguish between partially-subsidized and fully-subsidized applicants.

After the bench trial, the district court concluded that the 2015 Policy discriminated on the bases of both disability and source of income, in violation of the FHA and NYCHRL. *See Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt., Inc.*, No. 18-cv-1564 (ER) (OTW), 2023 WL 6390159, at *12–16 (S.D.N.Y. Sept. 29, 2023). As to the 2019 Policy, the district court found that it violated the NYCHRL because it continued to adversely impact applicants with partial subsidies on the basis of their source of income. *See id.* at *17–18. As a result, the district court enjoined Goldfarb from discriminating based on lawful sources of income in its rental application requirements. *Id.*

---

[2] There were other categories, but neither party argues that they are relevant to this appeal.

at \*18–19.  On appeal, Goldfarb principally challenges the district court's decision regarding the 2019 Policy.[3]

## DISCUSSION

The NYCHRL prohibits housing discrimination "because of any lawful source of income." N.Y.C. Admin. Code § 8-107(5)(a).  The NYCHRL instructs courts to construe its provisions "liberally," even if comparable state or federal laws have not been so construed.  *Id.* § 8-130(a). Federal law analogues to the NYCHRL serve as the floor for the rights guaranteed by the NYCHRL.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  A disparate impact claim can be brought under the NYCHRL when "a facially neutral policy or practice has a disparate impact on a protected group."  *Levin v. Yeshiva Univ.*, 96 N.Y.2d 484, 491 (2001); *see* N.Y.C. Admin. Code § 8-107(17).

On appeal, Goldfarb argues that the district court's disparate impact determination regarding the 2019 Policy was erroneous on two grounds.  First, Goldfarb asserts that the district court erred by adopting the statistical analysis of FHJC's expert.  Second, Goldfarb contends that the district court erred in determining the disparate impact by comparing the approval rate of applicants with no subsidy to applicants with a partial subsidy, while excluding the applicants approved with a full subsidy from the affected class.  We find these arguments unpersuasive and address each in turn.

---

[3] Goldfarb does not challenge the district court's finding as to the 2015 Policy "except insofar as determination of this appeal may affect the decision of the Court below to impose punitive damages and prospective relief."  Appellants' Br. at 18.  Because, as discussed below, we affirm the district court's determination regarding the 2019 Policy, there is no basis to disturb the award of punitive damages or prospective relief.

## I.    Methodology of FHJC's Expert

Goldfarb first contends that the district court "improperly accepted FHJC's expert's version of the statistics, which included applicants with insufficient vouchers and applicants who dropped out of the application process in assessing disparate adverse effect." Appellants' Br. at 20. Goldfarb argued that such denials should not be counted in the analysis because they are the result of the applicants' actions only, and not the 2019 Policy. Following a bench trial, we review the district court's determination regarding "what weight to accord expert opinion" for abuse of discretion. *Clerveaux v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 233 (2d Cir. 2021) (internal quotation marks and citation omitted). Moreover, we review the factual findings underlying the district court's determination for clear error. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 119 (2d Cir. 2021). As set forth below, we find no basis to disturb the district court's reliance on the methodology of FHJC's expert, Dr. Steil, including his incorporation of the "insufficient vouchers" category of denials in the disparate impact analysis.[4]

The district court thoroughly explained its reasons for crediting Dr. Steil's inclusion of the insufficient voucher denials in the analysis of the 2019 Policy's disparate impact. In particular, the district court noted three different ways, as recounted by Dr. Steil, that Goldfarb used its discretion under the 2019 Policy to deny an application for "insufficient voucher," even though such denial did not necessarily occur because the applicant applied for an apartment with a higher

---

[4] As set forth below, because we conclude that the inclusion of the "insufficient voucher" denials was proper, we need not consider Goldfarb's similar argument regarding the inclusion of "no contact" denials. In particular, even with the exclusion of "no contact" denials, Dr. Steil's analysis shows that only 20% of partially subsidized applicants were accepted compared to 30% of unsubsidized applicants. This disparity is statistically significant and alone is sufficient to establish a disparate impact claim, without regard to the dispute regarding inclusion of the "no contact" denials in the methodology.

6

rent than a subsidy program's applicable payment standard. First, the district court explained that Goldfarb had discretion in determining which rent (*i.e.*, the rent for the unit the applicant applied for, or, if that unit was unavailable, a comparable vacant unit) to use when it determined whether an applicant's voucher was sufficient. Second, the district court explained that some governmental assistance voucher programs have flexibility in the amount they will contribute towards rent. For example, the district court noted that the New York City HIV/AIDS Services Administration ("HASA") program may increase its subsidy to a recipient if the housing has amenities, such as an elevator, that would be beneficial to the applicant's health. Goldfarb introduced no evidence that it inquired whether this exception, or any other exception, was applicable before denying an applicant for "insufficient voucher." Third, the district court explained that some government programs, such as Section 8, can increase the rent limit by allowing voucher-holders themselves under certain circumstances to pay the difference—amounting to up to ten percent of their adjusted gross income—between the voucher's rent limit and the rent, and that Goldfarb failed to consider such flexibility before determining that a voucher was insufficient. After listing these three reasons to question the precision of Goldfarb's "insufficient voucher" label, the district court noted that the "insufficient voucher" label accounted for *more than a quarter* of Goldfarb's denials for applicants with subsidies.

To the extent Goldfarb suggests that the district court relied upon clearly erroneous facts in reaching this determination, we disagree. For example, there was evidence in the record that Goldfarb sometimes used the rent of a unit to which the applicant did not apply to determine that

7

the applicant's voucher was insufficient.[5]  Similarly, although one Goldfarb employee testified that Goldfarb took into account the ten percent flexibility allowed by Section 8 before denying an application due to an insufficient voucher, Dr. Steil identified fifteen partial subsidy applicants who might have been able to take advantage of the flexibility afforded by programs including Section 8, but were denied without any apparent consideration of that flexibility by Goldfarb. Notwithstanding this evidence, Goldfarb's expert, Dr. White, conceded at trial that he did not seek to verify whether Goldfarb had correctly determined the rent limit of any applicant's subsidy before rendering an "insufficient voucher" denial and acknowledged that, if certain applicants were incorrectly categorized as "insufficient voucher," his analysis could be impacted.  In short, the factual record was sufficient to support a finding that there were questions as to the accuracy and consistency of the use of the "insufficient voucher" justification to deny an application, such that those denials should be included in the disparate impact analysis regarding the 2019 Policy.

In sum, based on this record, Goldfarb failed to establish that the district court erred in relying upon Dr. Steil's statistical approach to support its finding that there was sufficient evidence to support the disparate impact claim.

## II.     Fully Subsidized Applicants

Goldfarb next argues that, by adopting Dr. Steil's decision to compare only partially subsidized applicants against unsubsidized applicants, the district court committed legal error by impermissibly excluding fully subsidized applicants and analyzing the impact of its 2019 Policy

---

[5] This practice occurred when the unit the applicant originally applied for became unavailable.  In such circumstances, under the 2019 Policy, Goldfarb could exercise discretion to determine what rent amount to use in its calculation, namely, the rent for the unit that was the subject of the application or the rent for another available unit in the building.

on a subgroup of a protected class.  We disagree.

"The basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy."  *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003).  Here, the fully subsidized applicants were not subject to the part of the 2019 Policy that FHJC challenged and that the district court found unlawful—namely, the minimum income requirements.  Because fully subsidized applicants were not affected by the challenged policy, the district court did not err in comparing only partially subsidized applicants to unsubsidized applicants.

\*                    \*                    \*

We have considered Goldfarb's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9